MUNROE *v.* GODKIN.[1]

1. WITNESSES—EXPERT TESTIMONY.

In an action to recover the contract price for the construction of a dock, where it is pleaded that, owing to faulty construction, the dock gave way and was carried out into the lake, the testimony of a witness as to what, in his opinion, was the cause of its going out, is properly excluded, in the absence of anything to show his qualifications.

2. EVIDENCE—GENERAL REPUTATION.

The fact that a party to a civil action is asked, on cross-examination, questions implying, by inference, wrongdoing upon his part, does not entitle him to introduce testimony as to his general reputation.

3. TRIAL—REMARKS OF COUNSEL.

A judgment will not be reversed because of statements made by the attorney for the prevailing party, in a colloquy between counsel, reflecting upon the opposite party, where the remarks were not excepted to at the time, and the court, of its own motion, instructed the jury that statements or charges of counsel, unsupported by the testimony, should be disregarded.

Error to Schoolcraft; Steere, J.   Submitted October 21, 1896.   Decided December 18, 1896.

*Assumpsit* by John Munroe, Jr., against John Godkin, for work and labor performed.   From a judgment for plaintiff, defendant brings errror.   Affirmed.

*Chester L. Collins*, for appellant.

*Henry Hoffman*, for appellee.

MOORE, J.   Plaintiff sued defendant, declaring on the common counts in *assumpsit*.   Defendant pleaded the general issue, with notice of set-off and recoupment.   A

[1] Rehearing denied January 16, 1897.

number of witnesses were sworn on each side. The case was submitted to a jury, who rendered a verdict in favor of plaintiff. Defendant appeals. The counsel who appears for defendant in this court did not take part in the trial of the case in the circuit court. All the assignments of error may be considered under three heads:

*First*, what occurred between counsel during the cross-examination of defendant.

*Second*, the refusal of the court to allow counsel for defendant to prove the general reputation of the defendant.

*Third*, the refusal of the court to allow Mr. Winter to testify what, in his opinion, was the cause of the dock's going out.

The record does not show that Mr. Winter was an expert, nor does it show such knowledge upon his part as would entitle him to give opinion evidence as to the cause of the failure of the dock to stand. It was not error to exclude his testimony.

As to the second group of errors assigned, no testimony had been offered attacking the general reputation of Mr. Godkin. The most that had been done, as will appear later, was to ask him questions implying, by inference, wrongdoing upon his part. His answer was received, and it denied any wrongdoing. We know of no rule of law that would authorize proof of general reputation in a civil cause under such circumstances.

As to the first group of errors, the record shows the following to have occurred:

" *Q.* Where were you born and brought up ?
" *A.* I was born in Canada, near Toronto.
" *Q.* In Canada ?
" *A.* Yes, sir.
" *Q.* And you lived there with your father ? Your father owned a farm there in Canada ?
" *A.* Yes, sir.
" *Q.* And you engaged in business there in Canada ?
" *A.* Yes, sir.
" *Q.* In the timber business ?

"*A.* Yes, sir.

"*Q.* Didn't you raise money to engage in that business by mortgaging your father's farm ?

"*A.* No, sir.

"*Q.* Do you swear that you didn't execute a mortgage on your father's farm, and forge your father's name to it?

"*A.* I swear I never did.

"*Mr. Humphrey:* I think that is an outrage. You don't propose to attempt to prove such a thing, and you know you can't prove it.

"*Mr. Hoffman :* If you will permit me to prove it, I will do it.

"*Mr. Humphrey:* Well, sir, we will permit you to prove it, and defy you to prove it. You know you can't prove it, and it is an outrage on this man to ask such a question.

"*Mr. Hoffman :* I have been informed that that is the truth.

"*Mr. Humphrey :* You know you can't prove it.

"*Mr. Hoffman :* I know I can do it, and, if this witness testifies to the truth, he will admit it.

"*Mr. Humphrey:* Well, I object to any such question, unless they say they will follow it up by evidence that it is so.

"*Court:* Well, that is collateral matter, and within certain limits such questions are allowed. When it reaches the limit, we will see that it is stopped.

"*Q.* How old were you when you commenced business?

"*A.* Seventeen.

"*Q.* How large a business? How much money did it involve?

"*A.* I think we made about $1,300 the first year.

"*Q.* How much capital did it take?

"*Mr. Humphrey:* I object to that, as being entirely immaterial and irrelevant.

"*Mr. Hoffman:* I want the jury to know what kind of a man this is that is testifying here.

"*Mr. Humphrey:* Suppose it took $100,000, and suppose it took $15. I object to the question, and ask that the objection go on record, and I ask a ruling.

"*Court:* Of course, in cross-examination, we cannot always compel counsel to disclose his purpose. I don't see the purpose at the present time, but there may be one. Within proper limits, we have to allow such an examina-

tion to go on for a limited time. Unless something discloses itself, we shall have to restrain this line of inquiry.

"*Mr. Hoffman:* I seek only to be fair. I don't want to do anything but be fair, and my only purpose in asking these questions is not for the purpose of worrying the witness or filling in the time, but for the purpose of showing to the jury the character of the man who is testifying now. But, at the suggestion of the court, I will drop that, and enter upon another subject of cross-examination."

It is urged with much zeal on the part of the defendant that he was prejudiced by what occurred, and upon that proposition he cites a large number of cases. It will be noticed that the most objectionable language used was in a colloquy, not between the counsel and witness, but between the respective counsel; each of them making assertions that it would have been well to omit, and counsel being alike in fault. No request was made of the court to correct any impression the jury might get from the colloquy prejudicial to the defendant, and no exceptions were taken to what occurred. The trial judge, however, upon his own motion, used, in his general charge, this language:

"Your province is to say what the facts are in this case from the testimony which has been offered, and you are expected to decide that, regardless of who are the parties to the litigation, and regardless of their opinions, or the opinions of counsel who have conducted the respective sides of the litigation. If, as it is claimed, any assertions of fact, any statements, have been made by counsel, unsupported by the testimony, you should disregard them. Any charges, criminations, or recriminations of counsel, outside of the testimony introduced, should cut no figure in this case. The province of the attorneys is to prepare the case, to present the testimony before the jury, and then, they having had time and experience to carefully consider the whole case, they appear before you, and from their standpoint argue the matter. That is, as a rule, of great assistance to the jurors, and their arguments should not be disregarded. It is the duty of the

juror to sit and carefully listen and weigh the arguments of counsel, and, as far as their theories appeal to their better judgment, to adopt them. But mere assertions made by counsel, not supported by evidence in the case, should cut no figure in the case."

The charge covered the questions at issue by the pleadings and proofs, and stated the law very clearly and correctly. The record does not disclose such error as would justify a reversal of the case.

Judgment is affirmed.

The other Justices concurred.