## ADAMS v. ELSEFFER.

1. EVIDENCE OF CHARACTER.

    In an action to recover money misappropriated by a clerk, testimony as to his good character is inadmissible.

2. TRIAL—EXPLANATION BY WITNESS.

    A witness, who testified that he knew of defendant's defalcation two years before he informed plaintiff, should have been permitted to explain why he withheld the information.

3. EMBEZZLEMENT—EVIDENCE—DAMAGES.

    In an action against a clerk to recover for money embezzled, evidence, in addition to proof of specific items taken, that, during the year preceding the last act of defalcation, the profits of the business were largely reduced, although the sales were larger at the same advance over cost, and the expense of the business less, together with testimony that defendant had expended and accumulated sums largely in excess of her income, made it a question for the jury to determine whether a larger sum was embezzled than the specific items proven.

Error to Saginaw; Beach, J. Submitted December 5, 1902. (Docket No. 116.) Decided December 29, 1902.

*Assumpsit* by James A. Adams against Florence H. Elseffer for money had and received. From a judgment for defendant, plaintiff brings error. Reversed.

*John M. Brooks* (*George W. Weadock*, of counsel), for appellant.

*Eugene Wilber* (*Humphrey & Grant*, of counsel), for appellee.

MONTGOMERY, J. This is an action of *assumpsit.* The plaintiff has for several years been engaged in the retail shoe business at the city of Saginaw. From 1895 until August 17, 1901, the defendant was his cashier and

bookkeeper. On that date the plaintiff, as the testimony offered on his behalf tends to show, discovered that defendant was appropriating money received from sales of goods to her own use, and falsifying the accounts by failing to enter the amounts upon the books. The plaintiff also offered testimony tending to show by one Erhart, a clerk of the plaintiff, that some two years previous he had become suspicious that defendant was misappropriating money, and that for a time he kept watch over her, and accumulated some evidence, which he entered in minutes taken at the time, but which for some reason he failed to disclose to the plaintiff. The alleged misappropriation of money was met by positive denial by the defendant, and she also offered in her defense evidence of her good character. The circuit judge, at the conclusion of the plaintiff's case, withdrew from the consideration of the jury any claim for moneys misappropriated except the specific items which were claimed to have been appropriated on the 17th of August, and on the previous occasions of which the plaintiff's witness Erhart kept an account. The jury returned a verdict for defendant, and the plaintiff brings error.

The questions presented are sufficiently indicated by the foregoing statement. Perhaps the most important one is whether the court erred in admitting testimony of character. It is quite apparent from the record that the testimony as to character was not intended to be confined to mere proof of reputation, but the purpose, apparently, was to get an expression from those who had previous dealings with the defendant of their opinion as to her probity. Whether the assignment of error raises this precise question may be doubtful, but, in the view we take of the general subject, it becomes unimportant. The question is presented as to whether evidence of character is admissible in a civil case, wherever the nature of the action is such that the evidence to sustain it involves the imputation of moral turpitude to the defendant. The general rule undoubtedly is, as stated in 1 Whart. Ev. § 47, that

in civil actions the character of either party is, as a rule, irrelevant. See, also, 5 Am. & Eng. Enc. Law (2d Ed.), p. 861. The correct rule, according to the great weight of authority, is that in civil actions the character of a party to the action may become the subject of proof in case, and only in case, it is involved in the issue. And we think the character is involved in the issue only in the cases in which either the right of recovery or the extent of recovery is affected by the character of either the plaintiff or the defendant. *Anderson's Ex'rs* v. *Long*, 10 Serg. & R. 55. It is true that there are cases which extend the rule further. And Mr. Greenleaf, in paragraph 54, vol. 1, states the rule more broadly, as follows:

"And generally, in actions of tort, wherever the defendant is charged with fraud from mere circumstances, evidence of his general good character is admissible to repel it."

This text is criticised by Mr. Wharton, and it is shown that it rests upon *Ruan* v. *Perry*, 3 Caines, 120, the doctrine of which was later repudiated in *Gough* v. *St. John*, 16 Wend. 646; *Pratt* v. *Andrews*, 4 Comst. 493; *Porter* v. *Seiler*, 23 Pa. St. 424 (62 Am. Dec. 341). Referring to *Ruan* v. *Perry*, Mr. Justice Champlin, in *Fahey* v. *Crotty*, 63 Mich. 383 (29 N. W. 876, 6 Am. St. Rep. 305), said:

"In the State of New York such evidence was at one time received in civil suits [citing *Ruan* v. *Perry*], but that case has been reviewed and overruled in later cases, and the English rule adhered to, as stated by the textwriters on Evidence."

In the same case of *Fahey* v. *Crotty*, Mr. Justice Champlin also said:

"In civil actions, with the exception of those cases where by the pleadings the character of the party is put in issue, the weight of authority is against the admissibility of such testimony to rebut imputations of misconduct or fraud."

We have met with no clearer exposition of the law upon

the subject than is found in *Simpson* v. *Westenberger*, 28 Kan. 756 (42 Am. Rep. 195). See, also, *Lander* v. *Seaver*, 32 Vt. 114 (76 Am. Dec. 156); *Wright* v. *McKee*, 37 Vt. 161; *Home Lumber Co.* v. *Hartman*, 45 Mo. App. 647; *Vawter* v. *Hultz*, 112 Mo. 633 (20 S. W. 689); *Gebhart* v. *Burkett*, 57 Ind. 378 (26 Am. Rep. 61); *Norris* v. *Stewart's Heirs*, 105 N. C. 455 (10 S. E. 912, 18 Am. St. Rep. 917). See, also, article by Elisha Greenhood in 16 Cent. Law J. 202, where the authorities are collated. In our view, the testimony offered was inadmissible.

The plaintiff called as a witness Mr. Erhart, who testified that he acquired knowledge of the defendant's defalcation some two years before he divulged it to the plaintiff. He was asked to state why he withheld this information, and the court ruled out the testimony. We think it was competent for the plaintiff to rebut the inference which would arise from such concealment of the fact by permitting the witness to explain.

In view of a new trial, it becomes important to determine if there was any testimony to go to the jury upon the question of whether a larger sum than the specific items mentioned was taken by the defendant. The testimony on behalf of plaintiff was this: That, during the year preceding her last defalcation, the profits of the business were reduced very largely, and this notwithstanding the fact that the sales were larger than the preceding year, and the expense of running the business was less than the preceding year. The only fault in this testimony, if any, was that the evidence may have failed to show specifically that the goods in which the plaintiff dealt were sold at substantially the same advance over cost during the last year as during the preceding year. If this were clear, it would be some evidence, at least, that the plaintiff lost by defalcation, or in some other unexplained manner, a considerable sum of money during this period. The evidence further tended to show that the defendant, when she entered the employ of the plaintiff, lived with her mother; that their only source of income, aside from

defendant's earnings, was the rental of two small houses or apartments belonging to her mother, amounting in the aggregate to from $18 to $22 per month, and certain gifts which came to defendant, the exact amount of which does not conclusively appear by the record; that, when she entered plaintiff's employ, her mother and herself had allowed the taxes to accumulate upon the property to the amount of $228, or thereabouts, and that, for the purpose of paying off the taxes, they had placed a mortgage upon the property for some $350; that thereafter, and while in the employ of the plaintiff, this mortgage, principal and interest, was paid off, taxes were kept up on the property, real estate was bought at a price of $225, and when defendant left plaintiff's employ she had $260 in the bank. It appears further that during this time the mother and daughter, and during a part of the time a nephew of the defendant, lived upon an income, as the testimony of the plaintiff tended to show, of something like $7 per week. While this may not be impossible, yet, in view of the fact that the defendant was unable to state, and did not attempt to state, some of the items of her expense of living, we think that, should it appear clearly that the plaintiff suffered a loss in excess of the specific items proven, upon a record showing the defendant's financial condition substantially as it appeared upon this trial, it would be the duty of the court to submit the question to the jury as to the amount which defendant embezzled. A case determined by this court upon facts somewhat resembling the present case is *Warren* v. *Holbrook*, 95 Mich. 185 (54 N. W. 712, 35 Am. St. Rep. 554).

The judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.