McQUISTEN v. DETROIT CITIZENS' STREET-RAILWAY CO.

1. EVIDENCE—CHARACTER—ADMISSIBILITY.

In an action against a street-railroad company for the death of a person crossing the track, testimony that deceased was a careful man is not admissible for plaintiff in the absence of an attack on his character by defendant by similar evidence.

2. SAME—DEATH—DAMAGES.

In an action under the "death act" for damages sustained by dependents of deceased by his death, evidence that he was a careful man is not material on the question of damages.

3. STREET RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

In an action against a street-railroad company for the death of a person while crossing the track, requested instructions that in considering whether deceased looked for the approaching car the jury should take into consideration the fact that his right eye was destroyed, and the testimony of plaintiff's witnesses before the coroner's jury, are properly refused as argumentative.

Error to Wayne; Carpenter, J. Submitted October 17, 1907. (Docket No. 88.) Decided December 10, 1907.

Case by William D. McQuisten, administrator of the estate of Peter Trudell, deceased, against the Detroit Citizens' Street-Railway Company for the negligent killing of plaintiff's intestate. There was judgment for plaintiff, and defendant brings error. Reversed.

*Brennan, Donnelly & Van De Mark*, for appellant.

*William Look* (*Thomas A. E. Weadock*, of counsel), for appellee.

HOOKER, J. The plaintiff's intestate, Peter Trudell, was killed by a Jefferson avenue car, in the suburbs of Detroit, under the following circumstances. At the point of

the accident, the defendant's street railway did not occupy the traveled portion of the highway, but was located near where the curb would be, were the street paved, on the northerly side of the highway.   A short distance west of the intersection of Bowen avenue with Jefferson avenue, and a few feet north of the track, there was a well, some-where from three to seven feet distant.   From Bowen avenue the track extended westerly in a straight line, for a distance of 2,900 feet, all visible from the well.

Trudell and others stopped their teams opposite the well for the purpose of watering their horses.   After waiting a short time, Trudell is said to have crossed the track to the well to get a pail of water, remaining there a minute or two, when he took up his pail of water and started back across the track, when he was struck by a car coming from the west, and killed.   He was blind in his right eye, that side being toward the approaching car.

In the course of the trial the following occurred.   One John Parker, deceased's fellow teamster, was testifying, being called for the plaintiff.   He had stated the circumstances and said:

"*Q.* What do you know, if anything, about his being a careful, prudent man?

"*A.* He was always a careful, a good sober, industrious fellow.   (Objected to as incompetent and moved to strike it out.)

"*The Court:* I will let the answer stand.   The question is improper, in my judgment.   Note an exception. If you want it struck out I will strike it out, Judge.

"*Mr. Look:* No, let it stand."

Counsel for the defendant asked the court to charge:

"(4) In considering whether the deceased looked for the approaching car the jury may take into consideration the fact that his right eye was destroyed."

Also:

"(5) In considering the testimony of plaintiff's witnesses Oakum and Parker, to the effect that the deceased looked for the car, you have a right and it is your duty to consider their former testimony before the coroner, when

both testified that they did not know whether he looked or not."

The court said:

"Now the question is, and it is to my mind the most important question in this case, whether or not Trudell, himself, was negligent. There is no dispute as to the surroundings up there where he was injured. Now it is a rule of law, as I understand it, and as I charge you, that a person about to cross a railroad track, whether that be a steam road or an electric road, is bound to look and listen for an approaching car, and he is chargeable with what looking and listening would have discovered. Now the question is what looking and listening would have discovered to Trudell on this occasion. All the testimony in the case from the plaintiff indicates that as Trudell approached the track at the time he met his death, he did look and looked in a westerly direction, looked toward this approaching car. It is true that the testimony indicates that he was blind in his right eye—I suppose it means blind in his right eye, that he had a glass eye and he could not, of course, obtain any aid from that eye. Nothing appears however to have been the matter with his left eye. The testimony, as I have already said, indicates that he did look as he approached the track. Now he is chargeable with being able to see what he could have seen at that time. Under any calculation that you can make the car was in full sight at that time. There cannot be any question about that. There is no testimony in the case which would warrant you in concluding any differently, but that the car was in sight, because he could see as he approached that track, according to Kehl's testimony, a quarter of a mile. He is the only one, as I recollect, who gave any evidence on that; so that the car was in full sight. Whether he saw it or not I cannot tell, and perhaps you cannot, but he is chargeable with what he could have seen. You may treat him in that way."

He made no allusion to the subject of the fifth request.

A verdict of $3,500 was rendered in favor of the plaintiff. Subsequently this verdict was set aside and a judgment entered of "No cause of action." See former opinion, 147 Mich. 69. After the filing of the opinion in that case the judgment of this court was so modified as to permit the review of the questions saved by counsel for the

defendant, and a new record is before us.    The three points mentioned are relied upon.

It seems to be conceded that a plaintiff's reputation or character is not admissible in his own behalf, unless attacked by similar evidence.    The natural tendency of evidence that the deceased "was always a careful    *    *    * man" would be to impress the jury with the thought that he was not likely to overlook the approach of the car, thereby having a direct influence on their view of the question of contributory negligence.    The learned circuit judge doubted the propriety of allowing it to stand as evidence and would have struck it out had not plaintiff's counsel deliberately elected to have it stand.

It is contended that this testimony was admissible, as bearing on the question of damages.    This action is brought under what has been denominated the "death act," and under it the damages recoverable are measured by the injury which certain dependents of the deceased can be shown to have lost by the death.    We cannot see that the fact that he was a careful man would have any proper bearing upon the question, even if it could be said to be admissible as bearing upon the question of damages in any case, which need not be determined.    We cannot say that this testimony was not injurious.    While we have held that this was a proper case to go to the jury, there was strong evidence of negligence on the part of the deceased, so strong indeed that the trial judge might well, as he did, consider it near the line of cases conclusively established.

Of the other two questions it is sufficient to say that the first was sufficiently covered in the charge, and while both referred to subjects proper for the jury to consider, the requests are of the nature of arguments upon the facts, more proper to come from counsel than the court.    We are constrained to reverse the judgment.

A new trial is ordered.

McAlvay, C. J., and Montgomery, Ostrander, and Moore, JJ., concurred.