McNABB v GREEN REAL ESTATE COMPANY

1. JURY—CHALLENGE FOR CAUSE—PRESUMPTION OF COMPETENCY—
   BURDEN OF PROOF.

   A juror is presumed to be competent, and a party challenging a
   juror for cause must show that the challenged juror has precon-
   ceived opinions or prejudices or other such interests or limita-
   tions as would impair his capacity to render a fair and impar-
   tial verdict.

2. JURY—VOIR DIRE—DISCRETION—ABUSE OF DISCRETION.

   A trial judge has broad discretion in his voir dire examination of
   a prospective juror, and his decision as to the juror's impartial-
   ity may be reversed only if it represents a clear abuse of that
   discretion.

3. JURY—APPEAL AND ERROR—CHALLENGE FOR CAUSE—PREJUDICE—
   INFERENCES.

   A party seeking reversal of a trial court's decision to include on
   the jury panel a juror who has been challenged for cause must
   show that the inclusion of the challenged juror resulted in
   actual prejudice or present facts clearly establishing an infer-
   ence of prejudice.

4. JURY—CHALLENGE FOR CAUSE—BIAS—PREJUDICE—COURT RULES.

   A trial court is required to excuse a juror whenever a challenge
   for cause clearly falls within one of the several grounds enunci-

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury §§ 267, 269, 298, 302.
[2–4] 47 Am Jur 2d, Jury §§ 200, 220, 221, 268.
[5] 47 Am Jur 2d, Jury §§ 272, 273.
[6] 29 Am Jur 2d, Evidence §§ 303, 336 *et seq.*
[7] 75 Am Jur 2d, Trial § 610.
  Construction of statutes or rules making mandatory the use of
    pattern or uniform approved jury instructions. 49 ALR3d 128.
[8] 75 Am Jur 2d, Trial § 745 *et seq.*
[9] 62 Am Jur 2d, Premises Liability § 203 *et seq.*
[10, 11] 57 Am Jur 2d, Negligence §§ 138, 148, 160, 163, 187, 261.
  Foreseeability as an element of negligence and proximate cause.
    100 ALR2d 942.

ated by court rule; such a showing is equivalent to a showing of bias or prejudice (GCR 1963, 511.4[4]–[13]).

5. JURY—CHALLENGE FOR CAUSE—COURT RULES.

A juror, challenged for cause because his wife had recently been in an accident with facts strikingly similar to those involved in the case to be tried, should have been excused because of his manifest interest in a question like the issue to be tried (GCR 1963, 511.4[13]).

6. EVIDENCE—REPUTATION.

Evidence of a party's reputation is generally inadmissible, whereas habit evidence is generally admissible; therefore admission of testimony regarding an injured plaintiff's reputation for care and that he was "not accident-prone" was error.

7. TRIAL—INSTRUCTIONS TO JURY—NEGLIGENCE—STANDARD JURY INSTRUCTIONS—COURT RULES.

A court is required to use a standard jury instruction where it is applicable and accurate, but where no standard jury instruction covers a case, the court may give additional instructions which are concise, understandable, conversational, unslanted and nonargumentative (GCR 1963, 516.6[4], [7]).

8. NEGLIGENCE—INSTRUCTIONS TO JURY—BASIS FOR INSTRUCTION—COURT RULES.

An instruction to the jury on negligence, in a case in which the plaintiff had fallen on a stairway in the defendant's building, regarding the use of nonskid strips on the stairway, which instruction had a basis in the evidence presented and which correctly stated the law as to a person reasonably prudent under the circumstances, was proper (GCR 1963, 516.6[4], [7]).

9. NEGLIGENCE—HAZARDOUS CONDITIONS—KNOWLEDGE—INFERENCES.

A plaintiff who is injured by reason of a hazardous condition on a stairway in a building need not prove that the defendant owner of the building had actual or constructive knowledge of the hazardous condition; such knowledge is inferred where the alleged hazardous condition is created by the defendant itself.

10. DAMAGES—NEGLIGENCE—APPORTIONMENT OF DAMAGES—INSTRUCTIONS TO JURY—UNCERTAINTY OF CAUSATION.

A jury was properly instructed that if they could not apportion damages where a plaintiff suffered injuries and a stroke subsequent to an initial injury which gave rise to his cause of action they should consider the defendant responsible for the entire

damage; uncertainty as to causation should be resolved in favor of the party whom the jury was found to have been wronged.

11. NEGLIGENCE—LATENT DISABILITY—AGGREVATION—PROXIMATE CAUSE.

A wrongdoer takes an injured person as he finds him and if a defendant's wrongful conduct is proved by a preponderance of the evidence to be a proximate cause of the aggrevation of a plaintiff's latent disability, the defendant is liable for such aggrevation.

Appeal from Wayne, Thomas J. Brennan, J. Submitted April 16, 1975, at Detroit. (Docket No. 19718.) Decided July 21, 1975. Leave to appeal denied, 395 Mich 774.

Complaint by Anna McNabb, individually and as executrix of the estate of Donald McNabb, deceased, against Green Real Estate Company for damages for injuries resulting from a fall in a building. Judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Lakin & Worsham, P. C.,* for plaintiff.

*Martin, Bohall, Joselyn, Halsey & Rowe, P. C.,* for defendant.

Before: ALLEN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Defendant appeals from a Wayne County Circuit Court jury verdict in plaintiffs' favor. The jury rendered a verdict in the amount of $105,000 for plaintiff Donald McNabb, who is now deceased, and of $25,000 for Anna McNabb, his wife and now executrix of his estate. The court denied defendant's motion for a new trial and defendant now appeals of right.

Defendant owns and operates the building in

which Donald McNabb worked. On December 24, 1969, Mr. McNabb, while leaving work, sustained a fractured left leg as a result of falling on the stairs in defendant's building. Mr. McNabb testified at trial that his fall occurred when his right foot slipped on the main landing and his left leg was pulled beneath him when he fell. The landing was made of marble and was slippery due to an accumulation of water. McNabb and other witnesses stated that a mat covered part of the landing but that it was saturated with water and was positioned so that an individual descending the stairs would first step on the bare, then wet, marble before reaching the mat.

Witnesses attributed the slippery state of the landing to an accumulation of slush, water and melted snow tracked in from outside the building. There had been a snow storm on the day before, but not on the day of, the accident. One of defendant's security guards, who first saw Mr. McNabb after his fall, testified that the water on the landing originated from two sources: (1) water which had accumulated in a depression in the area in front of the building entrance and (2) from the mat on the landing which had become saturated. Other witnesses stated that the depression in the front step was the result of continuous use and was so situated that individuals entering the building would, of necessity, step into it. No employee was designated to clean the area of the accident on the day it occurred.

I

On appeal, defendant raises five claims of error, two of which we find especially cogent. First, defendant contends that the trial court committed error by refusing to discharge a juror whom de-

fendant had challenged for cause. Defendant claims that the juror, a Mr. Seymour, should have been excused because the similarities between the instant case and an accident involving juror Seymour's wife were so great as to require his removal under GCR 1963, 511.4(13). That rule provides:

".4 Challenges for Cause. After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause. Every challenge for cause shall be determined by the court. A juror challenged for cause may be directed to answer every question pertinent to the inquiry. The following are grounds for challenges for cause:

* * *

"(13) that the person is interested in a question like the issue to be tried."

Juror Seymour stated during voir dire that, two weeks before the trial, his wife had slipped on some ice on the first step of the entrance to their apartment building. His wife had "a pulled ligament in her knee with a broken bone in her foot" necessitating a cast and causing great pain. The juror stated that his wife had consulted a lawyer to determine the possibility of suing the owner of the apartment building. At the time defendant challenged juror Seymour for cause, it had exhausted its peremptory challenges, GCR 1963, 511.5. Mr. Seymour was later named foreman of the jury.

Defendant argues that, in the alternative, because the facts placed the challenged juror under GCR 1963, 511.4(13), the trial court had no discretion to retain him and, even if the court had discretion, failure to excuse the juror was an abuse of discretion. Defendant cites *Rice v Winkelman Brothers Apparel, Inc,* 13 Mich App 281, 287; 164

NW2d 417 (1968), *lv den* 381 Mich 798 (1969), for the principle that a juror's "bias or prejudice may be inferred" when any of the grounds for challenge enunciated by GCR 1963, 511.4 are present.

Plaintiff responds by claiming that *Rice, supra,* makes the existence of actual prejudice or bias a matter for the trial judge's discretion. Plaintiff claims that *Rice* requires the challenging party to make a showing of prejudice and that defendant made no such showing. The trial court, in denying defendant's motion for a new trial, stated:

" * * * when the court does question in detail and satisfies itself that the concept of fairness will not be impaired, then in that instance it has properly exercised its discretion.

* * *

"* * * after lengthy questioning the Court was satisfied that the juror Seymour would be fair and that the defendant did not satisfy the Court, that they [sic] had proved his bias."

A juror is presumed competent, *People v Collins,* 166 Mich 4; 131 NW 78 (1911), *Lee v Misfeldt,* 1 Mich App 675; 137 NW2d 753 (1965), *lv den* 377 Mich 702 (1966), and the challenging party must show that the challenged juror "has preconceived opinions or prejudices, or such other interests or limitations as would impair his capacity to render a fair and impartial verdict". 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 466. A trial judge is given broad discretion in his voir dire examination of the juror, *Darr v Buckley,* 355 Mich 392; 94 NW2d 837 (1959), *Kuisel v Farrar,* 6 Mich App 560; 149 NW2d 894 (1967), *lv den* 379 Mich 770 (1967), and his decision as to the juror's impartiality may be reversed only if it

represents a clear abuse of discretion, *Rice v Winkelman Brothers Apparel, Inc, supra.*

Indeed, for several reasons, appellate reversal of this exercise of discretion is rare. First, in most cases of possible juror bias or prejudice, "[a] challenge is ordinarily granted to insure a fair and impartial trial." *Lee v Misfeldt, supra,* at p 679. Second, the "clear abuse of discretion" standard is a difficult barrier for a challenging party to overcome. Appellate courts will generally defer to the trial court's ability to better assess from a juror's demeanor whether he will be impartial. This deference is especially required in challenges made under the broad, more imprecise common law grounds of GCR 1963, 511.4(3), "that the person is biased for or against a party or attorney". The vast majority of cases reviewed by this Court are based on this section.

Third, and most importantly, the challenging party must show, on appeal, that the inclusion of a challenged juror resulted in "actual prejudice" or present "facts clearly establishing an inference of prejudice". *People v Schram,* 378 Mich 145, 160; 142 NW2d 662 (1966). Given the severe restrictions on impeaching a jury verdict, *Metz v City of Bridgman,* 371 Mich 586; 124 NW2d 741 (1963), a demonstration of actual prejudice is a virtual impossibility. As this Court noted in *Rice v Winkelman Brothers Apparel, Inc, supra,* subparagraphs (4)–(13) of GCR 1963, 511.4 present situations in which such prejudice may be inferred. Plaintiff here contends that *Rice* requires a challenging party, in addition to presenting a prima facie case under Rule 511.4(4)–(13), to make an actual showing of bias or prejudice. We disagree. We find that Rule 511.4 requires a court to excuse a juror whenever a challenge for cause clearly falls within

one of the grounds enunciated in subparagraphs (4)–(13). Such a showing is equivalent to a showing of bias or prejudice at common law. The committee comments to Rule 511.4 make this holding clear. The committee stated that the purpose of enumerating the grounds for challenges for cause were:

> "(1) to verify that unqualified jurors may be challenged; (2) to verify that biased jurors may be challenged; and, most important, (3) to indicate that the presence of some of the more common facts from which bias should be inferred *will result* in the juror's being excused upon challenge." (Emphasis supplied.) 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 461.

The words "will result" make it mandatory that the court excuse a juror who falls under one of the enumerated grounds for challenge.[1]

We find that the challenged juror's voir dire testimony placed him clearly within the proscription of GCR 511.4(13) and, as a matter of law, he should have been excused. The facts of the juror's wife's accident are strikingly similar to the transaction which gave rise to the instant case. Both juror Seymour's wife and Donald McNabb fell as a result of accumulated moisture near a building entrance. The building owner in both cases was responsible for maintaining the building. Both cases would have the same issues, *e.g.,* notice to the building owner of the condition, reasonableness of precautions, contributory negligence. Unlike the common law it is immaterial under the

---

[1] The requirement of GCR 1963, 511.4 that "[e]very challenge for cause shall be determined by the court" does not give the court discretion to refuse to exclude a juror whose voir dire testimony presents facts within the ambit of subparagraphs (4)–(13). Rather, it merely requires the court to conduct a hearing on every challenge for cause. 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed) pp 466–467.

court rules that juror Seymour and his wife had not in fact instituted a law suit. The common law ground of interest in another suit of the same character or involving the same controversy, *People v DeHaven,* 321 Mich 327, 333; 32 NW2d 468 (1948), is embodied in Rule 511.4(11). The rule cited here, 511.4(13), is concerned with interest in a "question", not a law suit. Because of the challenged juror's manifest "interest in a question like the issue to be tried", his claim of impartiality cannot overcome the statutory mandate.

Although we have discovered no precedent directly in point, we find persuasive the case of *Clemmons v Super Food Services, Inc,* 3 Mich App 377; 142 NW2d 491 (1966). There, this Court upheld a circuit court order of a new trial based on a finding that a jury had not been impartial. Although, unlike this case, a challenged juror in *Clemmons* had failed to mention the prejudicial facts during voir dire, the circuit court and this Court also found reversible prejudice from the fact that the juror:

"a. Had been involved in an accident similar to that found in the instant case;

"b. Had received injuries therefrom similar to those of plaintiff in the instant case;

"c. Had settled his claim for an amount identical to that awarded by the jury to the plaintiff in the instant case". *Id.* at p 381.

See also *People v DeHaven, supra. Cf. Citizens Commercial and Savings Bank v Engberg,* 15 Mich App 438; 166 NW2d 661 (1968). This showing of interest requires reversal.[2]

---

[2] In *Engberg,* an auto accident case, no prejudice was found where the juror disclosed after trial that his then estranged wife had been in

## II

Defendant's second claim of error is that a witness was erroneously allowed, over defendant's objection, to testify that plaintiff was predisposed to be a careful person. The challenged testimony occurred during direct examination by plaintiff's attorney:

"*Mr. Lakin:* * * * I will try to show that my client hasn't any reputation of falling before.
"*The Court:* I will allow you to do that. * * *

                *   *   *

"*Q. (by Mr. Lakin, continuing):* You are familiar with Mr. McNabb through work, is that correct?
"*A.* Yes, sir.
"*Q.* How many people worked in the same office with you?
"*A.* Approximately eighteen.
"*Q.* He is in the same office as you?
"*A.* Yes.
"*Q.* Same physical layout?
"*A.* Yes, sir.
"*Q.* Did you know of his reputation for being careful

an auto accident. The accident had occurred some eight years prior to the trial and the juror had no knowledge of the facts surrounding it.

In *Gustafson v Morrison,* 57 Mich App 655; 226 NW2d 681 (1975), this Court ordered a new trial where during voir dire a juror had failed to indicate that his wife and daughter had each been in accidents and that the juror had twice been a party to actions in which the adverse party was represented by the law firm representing complainant Gustafson. The Court stated that this juror could have been challenged for cause. Prejudice was demonstrated by the fact that the jury vote was 5-1, *i.e.,* one different vote would have changed the result.

We feel that determining prejudice by examining the effect of the challenged juror's *vote* is unrealistic. The important factor is the influence of an improperly seated juror on the other jurors. Because such prejudicial influence is impossible to determine, Rule 511.4 does not require a party to show such prejudice. Rather, such prejudice is conclusively presumed from the clear showing of a case under GCR 1963, 511.4(4)–(13) and cannot be considered harmless.

over his own personal safety at any time during the time he worked with you?

"*A.* Yes, sir.

"*Q.* Did you know of that reputation as of December 1969?

"*A.* Yes, sir, he was not accident-prone. This is an accident just like any other normal person would act in the office."

At the close of trial, defendant moved for a limiting instruction that this evidence was not to be used in determining whether plaintiff was contributorily negligent. The trial court denied this motion. Defendant cites *McQuisten v Detroit Citizens' Street-Railway Co,* 150 Mich 332, 335; 113 NW 1118 (1907), for the principle that "a plaintiff's reputation or character is not admissible in his own behalf, unless attacked by similar evidence". See also *Fahey v Crotty,* 63 Mich 383; 29 NW 876 (1886). The trial court, in denying defendant's motion for a new trial, stated that the challenged testimony was admissible under the case of *Hoffman v Rengo Oil Co, Inc,* 20 Mich App 575; 174 NW2d 155 (1969), *lv den* 383 Mich 815 (1970). The court stressed the holding of *Hoffman,* that "[e]vidence of habit is admissible to show like conduct on the occasion in question". *Id.* at p 576. Both plaintiff and the court distinguished *McQuisten, supra,* on the basis that whereas the injured party in *McQuisten* died, the plaintiff here was available at trial for cross-examination concerning his reputation.

We find that the trial court erred in admitting the challenged testimony. The crucial distinction here is between testimony concerning a party's "reputation" and evidence concerning a party's "habits". Michigan follows the majority rule in both cases: reputation evidence is generally inad-

missible, *McQuisten, supra,*[3] and habit evidence is generally admissible, *Werney v Reid,* 219 Mich 257; 189 NW 30 (1922), *Hoffman, supra.*

The majority rule concerning reputation evidence is applied with relative consistency. Where a negligent act by a party is in issue, courts will reject evidence of a party's reputation for care or negligence. McCormick on Evidence, § 156, p 325; 1 Wigmore on Evidence (3d ed), § 65, pp 481–484. A minority of states have admitted such proof where there are no eyewitnesses to the event available to testify. *Id.* Michigan does not follow the "no eyewitness" exception. *McQuisten, supra.* Narrow exceptions to the reputation evidence rule have been made in cases involving fraud or intentional torts. *Daniels v Dayton,* 49 Mich 137; 13 NW 392 (1882) (fraud), *Baumier v Antiau,* 79 Mich 509; 44 NW 939 (1890) (unlawful and violent dispossession).

McCormick on Evidence, § 162, pp 340–344, states the difference between reputation and habit evidence:

"Character and habit are close akin. Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. 'Habit,' in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation. If we speak of character for care, we think of the person's tendency to act prudently in all the vary-

---

[3] *See also Munroe v Godkin,* 111 Mich 183; 69 NW 244 (1896) (assumpsit for labor), *Kingston v Fort Wayne & Elmwood R Co,* 112 Mich 40; 70 NW 315 (1897) (personal injury), *Adams v Elseffer,* 132 Mich 100; 92 NW 772 (1902) (assumpsit for misappropriation of funds, evidence of defendant's good character excluded), *Harris v Neal,* 153 Mich 57; 116 NW 535 (1908) (civil rape action, plaintiff's bad reputation for chastity excluded), *Gardner v Gardner,* 311 Mich 615; 19 NW2d 118 (1945) (action for specific performance, evidence of obligor's character inadmissible).

ing situations of life, in business, family life, in handling automobiles and in walking across the street. A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic." (Footnotes omitted.)

The challenged testimony here dealt with reputation, not habit. The witness did not testify as to how plaintiff walked on the stairs each day but rather claimed that plaintiff was "not accident-prone". As such, the testimony was inadmissible and erroneously permitted into evidence. We do not feel that, by itself, this error would require reversal. On retrial, the testimony should be excluded.

III

Defendant raises other claims of error regarding three jury instructions which require discussion because of their likely presence at retrial. Defendant contends that the trial court's instruction regarding the possible use by defendant of non-skid strips on the stairs of its building was in error because it was irrelevant and argumentative, contrary to GCR 1963, 516.6(4). The instruction, to which defendant objected, was:

"I instruct you that a proprietor of a building may be found negligent in failing to employ skip-preventing devices in connection with the stairway or landing alleged to have become slippery as a result of the foreseeable tracking of the water, mud or slush by a failure to install such anti-skid or slip-preventing devices. *If you find from the evidence that a reasonably*

*prudent person in the position of the defendant would
have realized the benefits of such devices,* and equipped
the landing, the stairway—I am going to read that one.
If you find from the evidence that a reasonably prudent
person in the position of the defendant would have
realized the benefits of such devices and equipped the
landing, the stairway or both with such devices. Now,
that last relates back, rather a long sentence, to the
beginning of the paragraph which say, I instruct you
that *the proprietor of a building may be found negli-
gent for failing to employ these devices.* And then I
proceed on. If you find that such devices would be—he
would realize the benefits of such devices as far as the
safety is concerned." (Emphasis supplied.)

Under GCR 516.6(2) a court is required to use a
Standard Jury Instruction (SJI) where it is appli-
cable and accurate. Where no SJI covers a case, a
court may give additional instructions which are
"concise, understandable, conversational, un-
slanted and non-argumentative". GCR 1963,
516.6(4). We find that the above instruction had a
basis in both the evidence and in the law. Plaintiff
presented evidence to show that neither the mat
on the landing nor the stairs had non-skid strips.
Plaintiff testified that his left foot slipped off the
bottom stair after his right foot slipped on the
landing, causing him to fall on his left leg. Plain-
tiff introduced evidence as to the benefits of non-
skid devices. The instruction was based on the case
of *Mulcahy v Argo Steel Const Co,* 4 Mich App
116; 144 NW2d 614 (1966), *lv den* 378 Mich 741
(1966). While not factually in point, *Mulcahy* accu-
rately states the rule of law which the trial judge
correctly instructed here, that of the person rea-
sonably prudent under the circumstances. See *e.g.,*
*Frederick v Detroit,* 370 Mich 425; 121 NW2d 918
(1963).

The second jury instruction on which defendant

claims error is one in which defendant contends that the court removed the requirement that plaintiff prove notice or knowledge of a dangerous condition when the court instructed that:

*"I charge you that a proprietor of a building is liable for injuries resulting from an unsafe condition caused by the active negligence of its employees. * * * In an* action such as this involving the slipping and falling on a floor, it is not necessary for the plaintiff to have to prove that the defendant had actual or constructive knowledge of the hazardous condition if any, of the floor or stair where the alleged negligence is, is that of a defendant in creating the condition of danger in permitting water, slush or mud to accumulate. All it is saying is that it is not necessary to have constructive knowledge. *If a condition liable to cause personal injury to an invitee or user of a stairway or landing is occasioned by the proprietor or its employees, no notice of such condition need be given such defendant in order to fasten actionable liability."* (Emphasis supplied.)

This instruction did not misstate the applicable law. The emphasized portion correctly enunciates the rule propounded in the leading case of *Hulett v Great Atlantic and Pacific Tea Co,* 299 Mich 59, 66–67; 299 NW 807 (1941):

"It was not necessary for plaintiff to prove defendant had actual or constructive knowledge of the hazardous condition * * *, as the alleged negligence was the act of defendant in creating this condition. Defendant could not by its own act create a hazardous condition and then demand that plaintiff, who was injured as a result thereof, prove it had knowledge of such condition. Knowledge of the alleged hazardous condition *created by defendant itself* is inferred." (Emphasis supplied.)

See also *Anderson v Merkel,* 393 Mich 603; 227

NW2d 554 (1975), *Pollack v Oak Office Bldg,* 7 Mich App 173; 151 NW2d 353 (1967).

In its denial of defendant's motion for a new trial, the court apparently indicated that it had removed the element of notice from jury consideration. Our reading of the above instruction, however, convinces us that the trial court did not instruct the jury that plaintiff did not have to prove knowledge of the alleged dangerous condition by defendant. The court instructed the jury that, if they found that defendant *created* the dangerous condition, knowledge of that condition could be inferred. On the basis of the evidence presented, the jury could have found that defendant created the dangerous condition by allowing the depression in front of the building entrance to remain and to collect water which would inevitably be tracked into the building. The jury could have found that this act, combined with a failure to either regularly remove the water from the depression or place a mat over or near the depression, constituted a "creation" of the dangerous condition by defendant. We suggest that, on retrial, an instruction taken directly from *Hulett, supra,* be given. We also suggest that the court instruct the jury on the converse of the *Hulett* theory, that if the jury finds that the dangerous condition was created by another force, *e.g.,* weather or a third party, then the jury must find that defendant had notice or knowledge of the condition.

## IV

The third instruction challenged by defendant concerned the apportionment of damages between those injuries which result from a defendant's negligence which may aggravate a pre-existing

condition and those which are the natural effects of the pre-existing condition or caused by post-accident acts. Plaintiff Donald McNabb was described at trial as a "brittle diabetic". The accident on which this suit was based occurred in December of 1969. In July, 1970, Mr. McNabb fell while attempting to move a chair at home and fractured the same leg, but in a different place than had been broken in the first fall. In July, 1971, Mr. McNabb suffered a stroke which affected his right arm and leg. In July, 1972, he was forced to have three toes on his left leg amputated because of the onset of gangrene in them.

At trial, there was a considerable dispute over whether the 1971 stroke was related to the first fall and over the extent to which the first fall had contributed to Mr. McNabb's disability. Three doctors testified about these matters. The first, Dr. Horvath, testified that the first injury may have sufficiently weakened Mr. McNabb's leg so as to have made him predisposed to fall the second time. He stated that the diabetic condition delayed healing but that the stroke had no relation to the first fall. Dr. Johnson, the orthopedic surgeon who had operated on Mr. McNabb in December, 1969, testified that this injury was a cause of the July 1970 fall. Dr. Johnson claimed that there could have been some relationship between the trauma produced by the two falls and the stroke, although he had no way of determining this with certainty. A deposition of one Dr. Cahalan was introduced into evidence. He stated that it was "conceivable that the injury did contribute in an indirect way to the formation of [plaintiff's] clot", which caused the stroke.

The trial court instructed the jury that:

"Under our law, the defendant is responsible to com-

pensate an injured plaintiff for that damage which his wrong has caused. If a condition of pain or disability in the plaintiff is a product of a preexisting disease or state of health, and the effects of trauma from the accident which is the basis of this suit, you must attempt to apportion such pain and disability as to whether it was due to the accident or would have existed in any event. However, it becomes impossible to make this apportionment *if you can't apportion the amount of damages resulting from each individual cause, [t]he defendant whose act of negligence caused the trauma and the very problem of the risk of uncertainty, is held responsible for the entire damage.* That is only if you cannot separate. Can you understand that? Thus, if you, the jury, are unable to make an apportionment or division of accident and non-accident injuries and damages, there is, what in law is considered to be an indivisible injury and the defendant must be deemed to be responsible for all such injury and damages you have determined him to have sustained. *If from the nature of the case damages cannot be estimated with certainty and there is a risk of giving by one course less and another course more than a fair compensation, it is the policy of the law of this state that it is better to run a slight risk of giving somewhat more than actual compensation than to reach a result which under the circumstances of the case, would in all reasonable probability, prejudice the injured plaintiff for the recovery of a large portion of the damages he has sustained."* (Emphasis supplied.)

We find this instruction to have been correctly given. A clear factual basis for it exists. The first emphasized portion of the instruction, *i.e.,* that if the jury could not apportion damages, it should hold defendant responsible for all of them, was based on a decision of the Colorado Supreme Court, *Newbury v Vogel,* 151 Col 520; 379 P2d 811 (1963). The plaintiff in that case suffered from arthritis prior to the time that he was in an auto accident with the two defendants. Two medical

experts could not apportion plaintiff's injuries between his pre-existing condition and the accident-caused aggravation of that condition. The court found that the trial court had committed error in refusing to give an instruction tendered by plaintiff substantially the same as the one given in the instant case. The court held, p 524:

"We find the law to be that where a pre-existing diseased condition exists, and where after trauma aggravating the condition disability and pain result, and no apportionment of the disability between that caused by the pre-existing condition and that caused by the trauma can be made, in such case, even though a portion of the present and future disability is directly attributable to the pre-existing condition, the defendant, whose act of negligence was the cause of the trauma, is responsible for the entire damage. *Owen v Dix,* 210 Ark 562, 196 SW2d 913, *Wise v Carter,* 119 So 2d 40 (Fla Civ App, 1960)."

While this holding has been followed in a number of other jurisdictions,[4] there is no dispositive Michigan case. We hold that, based on an examination of relevant Michigan case law, the challenged instruction accurately states the policy of this jurisdiction and was correctly given. It has long been established that a wrongdoer takes an injured person as he finds him, and, that, if the defendant's wrongful conduct is proved by a preponderance of the evidence to be a proximate cause of the aggravation of a latent disability, he is liable for such aggravation. *Schwingschlegl v*

---

[4] In addition to the cases cited in *Newbury v Vogel, supra —Owen v Dix,* 210 Ark 562; 196 SW2d 913 (1946), *Wise v Carter,* 119 So 2d 40 (Fla Civ App 1960)—a number of other jurisdictions have approved this theory: *Kawamoto v Yasutake,* 49 Ha 42; 410 P2d 976 (1966), *Blaine v Byers,* 91 Ida 665; 429 P2d 397 (1967), *Morris v Rogers,* 80 NM 389; 456 P2d 863 (1969), *Foster v Baptist Memorial Hospital,* 506 SW2d 775 (Tenn App 1973).

*City of Monroe,* 113 Mich 683; 72 NW 7 (1897); 2 Restatement of Torts 2d, § 461, p 502; 2 Harper and James, The Law of Torts, § 20.3, p 1127. More significant is the policy of this jurisdiction as to the apportionment of the burden for uncertainty of damages. As the trial court noted in the second emphasized portion, uncertainty as to causation should be resolved in favor of the victim.

This has long been the law of this jurisdiction. *Allison v Chandler,* 11 Mich 542, 553–554 (1863), *Grant v National Acme Co,* 351 F Supp 972, 981 (WD Mich 1972). This policy does not, as defendant claims, remove from a plaintiff the burden of showing that the negligence of the defendant was the proximate cause of the injury, *Schwingschlegl v City of Monroe, supra.* It merely gives the benefit of any doubt in determining damages to the party whom the jury has found to have been wronged.

Reversed and remanded for a new trial. Costs to defendant.