## DELLA PELLA v WAYNE COUNTY

Docket No. 96675. Submitted February 9, 1988, at Detroit. Decided May 2, 1988. Leave to appeal applied for.

Mark Della Pella brought an action in Wayne Circuit Court against his former employer, Wayne County, and various Wayne County officials, alleging wrongful termination of employment and defamation with regard to defendants' response to inquiries made by plaintiff's subsequent prospective employers concerning plaintiff's work history and reason for discharge. Pursuant to the jury's verdict, the trial court, James A. Hathaway, J., entered a judgment in favor of defendants. Plaintiff appealed, claiming error requiring reversal occurred when the trial court admitted into evidence the testimony on direct examination of a witness presented by defendants regarding a specific instance of plaintiff's conduct while employed by defendants.

The Court of Appeals *held:*

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. However, inquiry is allowable into reports of relevant specific instances of conduct only on cross-examination. In this case, the trial court erred in admitting the witness' testimony as to plaintiff's reputation since the testimony was elicited on direct examination. However, the error was harmless since other evidence amply supported the jury's verdict and the jury was not influenced by the evidence admitted in error.

Affirmed.

EVIDENCE — CHARACTER EVIDENCE — REPUTATION — SPECIFIC INSTANCES OF CONDUCT.

Evidence of a person's character or a trait of his character is generally not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion; in all

REFERENCES

Am Jur 2d, Evidence §§ 336 *et seq.,* 503 *et seq.*

Admissibility of testimony as to general reputation at place of employment. 85 ALR3d 525.

cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation; however, inquiry is allowable into reports of relevant specific instances of conduct only on cross-examination (MRE 404[a], 405[a]).

*Thomas F. Brill,* and *E. R. Whinham,* of Counsel, for plaintiff.

*Samuel A. Turner,* Corporation Counsel, and *Nathan M. Pardi,* Assistant Corporation Counsel, for defendants.

Before: M. J. KELLY, P.J., and H. HOOD and M. WARSHAWSKY,* JJ.

PER CURIAM. Plaintiff appeals as of right from a jury verdict of no cause of action in his wrongful termination of employment and libel claim against defendants. We affirm.

Between 1976 and 1981, plaintiff worked for the Wayne County Sheriff's Department in a series of provisional appointments. These appointments were temporary assignments in which plaintiff worked as a guard in various Wayne County jails. Employees who worked in these provisional appointments were not "full" police officers, as they did not carry guns, had no power of arrest, and were not represented by the union. When a provisional appointee's employment was terminated, he or she did not have to be given a reason.

On January 7, 1981, plaintiff's superior, Sergeant James Reed, handed plaintiff a termination notice. The notice set forth no reasons for plaintiff's termination. Two years later, plaintiff found out that his personnel file with defendant contained a memorandum from Reed to Inspector Richard Stover stating that plaintiff was dismissed

---

* Circuit judge, sitting on the Court of Appeals by assignment.

because of an incident which allegedly occurred on January 2, 1981. According to the memo, on that date Reed asked plaintiff to work overtime. Plaintiff asked Reed if he could make a phone call, and Reed said he could. A few minutes after plaintiff made the call, a woman called, saying she was plaintiff's mother and that there was an emergency at plaintiff's home. The woman requested that plaintiff be allowed to come home. Reed allowed plaintiff to go home. Approximately a half hour later, when Reed walked into a local bar to join co-workers and to cash his paycheck, he saw plaintiff standing at the end of the bar, drinking. The memo stated that the next day plaintiff made disrespectful comments regarding Reed before roll call. Plaintiff also discovered in his personnel file forms from prospective employers to which plaintiff had applied for jobs after his termination. These forms were sent by the employers to Wayne County, requesting information regarding plaintiff's work at Wayne County and the reasons he did not work there anymore. On one of the forms, defendants stated that plaintiff was terminated because he refused to follow orders. This was signed by Stover. Another form stated that he was terminated for "disciplinary reasons." This form was signed by Loren Pittman, Undersheriff of Wayne County.

When plaintiff found out about these items in his personnel file, he retained an attorney and attempted, to no avail, to persuade defendants to retract the statements they made to plaintiff's prospective employers. Plaintiff denied that the incident regarding overtime occurred. Plaintiff then filed suit against the County of Wayne, Wayne County Sheriff William Lucas, Inspector Stover, and Sgt. Reed. Plaintiff's complaint contained counts of libel and slander, wrongful termi-

nation, breach of contract, tortious interference with an ongoing advantageous business relationship, and intentional infliction of emotional distress. Following defendants' motion for a directed verdict, the breach of contract, tortious interference with business relationship, and intentional infliction of emotional distress counts were dismissed, as were all claims against Lucas and Stover. Thus, trial commenced only on the libel and slander and wrongful termination counts, against Sgt. Reed and Wayne County.

At trial, plaintiff denied that the incident regarding overtime occurred. He claimed that he was discharged because on December 8, 1980, he moved an inmate to a different cell following an attack upon the inmate by another inmate. He testified that, following this incident, Sgt. Reed admonished him and told him not to make "waves." Defendants, through the testimony of Reed, Stover, and Loren Pittman, testified that plaintiff was discharged because of the overtime incident.

The jury was given a special verdict form. To the question, "Did the defendant make the statement complained of to a third person by writing?" the jury answered, "Yes." To the second question, "Was the statement false in some respect?" the jury answered, "No." The jury also found in favor of defendants on the wrongful termination claim.

On appeal, plaintiff raises one evidentiary issue. In plaintiff's case in chief, plaintiff called Jackie L. Busher, who was plaintiff's supervisor at J. L. Hudson department store's security department, where plaintiff presently works. Busher testified upon direct examination as follows:

> *Q.* Now, in terms of—can you comment on plain-

tiffs [sic] job performance with J. L. Hudson's since he's been working with the company?

*A.* Well, since he's been with us it's been very good, shows a lot of initiative in what he's doing, follows through on what his assignments are.

*Q.* And how is he in terms of punctuality?

*A.* Very good, other than vacations and personal days I don't think he missed but maybe one or two days in three years.

*Q.* Have you ever asked him to work more than the regular basic work?

*A.* At times, yes.

*Q.* Has he ever refused to do this for you?

*A.* No he hasn't.

\* \* \*

*Q.* I mean, is he responsible for the assets contained in that warehouse?

*A.* Yes, definitely.

*Q.* And do you trust him to take care of that warehouse?

*A.* Fully, yes.

In defendants' case in chief, defendants called Linda Chilkiewicz. Chilkiewicz testified, over plaintiff's objection, to an incident which occurred in 1978, when she and plaintiff both worked at the Westland jail:

*Q.* Would you please tell the jury in your own words what you recall about the last time that you worked with Officer Della Pella?

*A.* We were working the afternoon shift. He handcuffed me to a chair for about five minutes.

*Q.* And now, how did this happen? Did—were you kidding around?

*A.* No.

*Q.* Were you struggling when he did this?

*A.* Yes.

*Q.* Did you consent to this?

*A.* No.

*Q.* Where did this happen?

*A.* In an area called visit, 3 Visit.

*Q.* And why did this whole incident take place, do you have any idea?

*A.* No.

*Q.* Now, Officer, what happened after the five minutes were up, what was the plaintiff doing? What was Mark Della Pella doing at that time after you were handcuffed to the chair?

*A.* Laughing, joking.

*Q.* Did you think it was funny?

*A.* No, I was very mad, very upset.

\* \* \*

*Q.* All right. Aside from that incident did you have any occasion to witness or to work with Mark Della Pella again?

*A.* No.

*Q.* Would you have if you had been assigned?

*A.* No.

*Q.* Why not?

*A.* I just didn't trust him. I just didn't want to, from that one incident.

The court allowed the testimony because it felt character was very important in the case, and because it felt the testimony was not unduly prejudicial.

On appeal, plaintiff claims that Chilkiewicz's testimony was inadmissible character evidence. Plaintiff claims that the testimony was inadmissible because, if plaintiff had been convicted of assault because of the incident, evidence of his conviction would have been inadmissible under MRE 609(a). Defendants claim the testimony was admissible because plaintiff "opened the door" with Busher's testimony. We feel that both parties' arguments miss the mark.

Initially, we note that there is a question as to whether Busher's testimony, that plaintiff was a

good worker, was admissible. The Michigan Supreme Court has long held that testimony of good character and reputation is inadmissible in a civil action where the character of the party is not attacked first. *Munroe v Godkin,* 111 Mich 183, 184; 69 NW 244 (1896); *Kingston v Fort Wayne & E R Co,* 112 Mich 40, 42-44; 70 NW 315 (1897); *Adams v Elseffer,* 132 Mich 100, 101-103; 92 NW 772 (1902); *McQuisten v Detroit C S-R Co,* 150 Mich 332; 113 NW 1118 (1907); *Harris v Neal,* 153 Mich 57; 116 NW 535 (1908); *Gardner v Gardner,* 311 Mich 615, 623; 19 NW2d 118 (1945). This Court followed this general rule in *McNabb v Green Real Estate Co,* 62 Mich App 500, 509-512; 233 NW2d 811 (1975), lv den 395 Mich 774 (1975).

However, these cases were all decided before the Michigan Rules of Evidence were adopted. The rules became effective on March 1, 1978. MRE 404 states:

> (a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
>
> (2) Character of victim of a crime other than a sexual conduct crime. Evidence of a pertinent trait of character of the victim of the crime, other than in a prosecution for criminal sexual conduct, offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
>
> (3) Character of victim of sexual conduct crime. In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the

defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease;

(4) Character of witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.

In *Keefer v C R Bard, Inc,* 110 Mich App 563; 313 NW2d 151 (1981), the plaintiff filed suit against the manufacturer of a catheter, the nurse who inserted the catheter in the plaintiff's arm, and the hospital, for injuries sustained when the catheter broke in her arm and traveled to her lung. At trial, counsel for the defendant hospital and the nurse asked the administrator of the hospital what type of employee he considered the nurse to be. *Keefer, supra,* p 574. The administrator replied that she was very competent and that no complaints had been brought to his attention concerning her. *Id.* The manufacturer appealed, claiming this was improper character evidence. *Id.,* p 575. This Court cited the general rule of MRE 404(a) that evidence of a person's character is not admissible to prove that the person acted in conformity therewith and stated that the administrator's testimony was not offered to prove that the nurse acted in conformity therewith; therefore, it was admissible. This Court stated that the issue at trial was whether the nurse had followed direc-

tions in putting the catheter in the plaintiff's arm, and that the administrator's testimony that she was a good employee and that he received no complaints about her did not prove that she followed directions. *Id.,* p 576. *Keefer* instructs that character and reputation evidence are admissible in a civil trial as long as MRE 404 is strictly followed. Strict adherence to MRE 404(a) in the instant case leads us to believe that Busher's general testimony that plaintiff was a good employee, was punctual, had initiative, and that he trusted plaintiff was admissible as it was not offered specifically to prove that plaintiff acted in conformity therewith. However, Busher's testimony that he often asked plaintiff to work overtime and that plaintiff did so was offered to prove that plaintiff acted in conformity therewith, i.e., that plaintiff worked overtime when asked to on January 2, 1981. Whether this portion of Busher's testimony is characterized as character evidence under MRE 404(a) or as testimony of a specific prior act under MRE 404(b), it was inadmissible.

However, we need not address the admissibility of Busher's testimony, as defendants did not object to it and did not cross appeal. The only issue before us is whether the court erred in admitting the testimony of Chilkiewicz. We find the court did err. MRE 405(a) states:

Reputation. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. *On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.* [Emphasis added.]

Chilkiewicz testified as to a specific instance of plaintiff's conduct. According to MRE 405(a), evi-

dence of specific instances of conduct are admissible only upon cross-examination. While defendant could cross-examine Busher about whether he knew of the handcuffing incident, Chilkiewicz could not properly testify to the incident. *People v Champion,* 411 Mich 468; 307 NW2d 681 (1981).

Although Chilkiewicz's testimony was error, we find the error was harmless and does not require reversal. MCR 2.613(A), formerly GCR 1963, 529.1, states:

> Harmless Error. An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

Our review of the record leads us to believe that the jury verdict would not have been different had Chilkiewicz not testified. There was ample evidence in support of the jury's verdict and we do not believe the jury was influenced by the fact that plaintiff at one time handcuffed Chilkiewicz to a chair for five minutes. We find the error to be harmless.

Affirmed.