CUSHMAN v FRANKEL

Docket No. 47422. Submitted February 5, 1981, at Detroit.—Decided December 1, 1981. Leave to appeal applied for.

Joan Cushman, upon being admitted to Providence Hospital and prior to receiving treatment from Doctors Maurice Frankel and J. M. Mandeberg signed an agreement to arbitrate any dispute arising from her treatment. The agreement was not revoked in writing within the 60-day period provided by the terms of the arbitration agreement and the Michigan Medical Malpractice Arbitration Act. Mrs. Cushman died after her discharge from the hospital. Lowell Cushman, as administrator of the estate of Joan Cushman, deceased, brought suit against Dr. Frankel, Dr. Mandeberg and Providence Hospital in Wayne Circuit Court alleging malpractice. Roman S. Gribbs, J., granted the defendants accelerated judgment. The plaintiff appeals, alleging that (1) the arbitration act violates his right to a hearing before a fair and impartial tribunal since any arbitration panel will include a physician or hospital administrator, (2) the arbitration agreement constituted an unenforceable contract of adhesion, and (3) the circumstances under which arbitration agreements are signed are not conducive to a knowing waiver of the right to court access. *Held:*

1. The plaintiff was not denied due process by the act's requirement that a doctor or hospital administrator sit on the arbitration panel.

2. The arbitration agreement is not a contract of adhesion.

3. Plaintiff's argument that the signing of the arbitration agreement constituted an unknowing waiver of constitutional rights is without merit. The plaintiff's decedent knowingly waived only the right to trial of any dispute before a court and no other constitutional right.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contracts §§ 1, 5.

[2-4, 6] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 374, 376.

Arbitration of medical malpractice claims. 84 ALR3d 375.

[5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 147.

Professional incompetency as ground for disciplinary measure against physician or dentist. 28 ALR3d 487.

BRONSON, P.J., dissented. He believed that the proper legal standard for determining whether arbitration panels pose due process problems is whether the tribunal is composed in such a way that too great a risk exists that one or more of the judges may have a personal interest in the outcome of the proceedings and, consequently, be biased. He believed that the Medical Malpractice Arbitration Act is unconstitutional for failing to provide for a facially fair tribunal. He would reverse.

## OPINION OF THE COURT

1. CONTRACTS — ADHESION CONTRACTS.

   The essence of an adhesion contract is that it is offered on a take it or leave it basis to a consumer who has no realistic bargaining strength and who cannot obtain the desired services or goods without consenting to the contract terms.

2. ARBITRATION — PHYSICIANS AND SURGEONS.

   Medical malpractice arbitration agreements may be revoked by the patient within 60 days of execution or with regard to hospitals within 60 days of discharge from the hospital (MCL 600.5041; MSA 27A.5041).

3. ARBITRATION — PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE ARBITRATION ACT — STATUTES.

   The Michigan Medical Malpractice Arbitration Act is not an unconstitutional denial of a malpractice plaintiff's right to due process of law merely because the act requires that a doctor or hospital administrator sit on the arbitration panel (MCL 600.5044; MSA 27A.5044).

## DISSENT BY BRONSON, P.J.

4. PHYSICIANS AND SURGEONS — MEDICAL MALPRACTICE ARBITRATION ACT — DUE PROCESS.

   *The Medical Malpractice Arbitration Act is unconstitutional for failure to provide for a facially fair tribunal; the portion of the statute relating to the composition of the arbitration panels violates due process of law by forcing the litigant to submit his claim to a tribunal which is composed in such a way that a high probability exists that said tribunal will be biased against the claimant without mandating the use of an arbitration form explicitly detailing the nature of the panel's makeup.*

5. PHYSICIANS AND SURGEONS — DISCIPLINARY ACTIONS — MALPRACTICE.

   *Disciplinary actions for members of a profession and actions for*

*damages on account of the alleged malpractice of a professional serve different functions; the two should not be confused and neither adjudicative system should be cited as a reason for upholding some aspect of the other type of system.*

6. ARBITRATION — PHYSICIANS AND SURGEONS.

*The appropriate test to determine whether an arbitration panel deprives a party of due process is whether the tribunal is composed in such a way that too great a risk exists that one or more of the judges may have a personal interest in the outcome of the proceeding and consequently may be biased.*

*Lopatin, Miller, Bindes, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman),* for plaintiff.

*Schureman, Frakes, Glass & Wulfmeier* (by *Edward C. Reynolds, Jr.),* for defendants Frankel and Mandeberg.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Donald A. Ducastel),* for Providence Hospital.

Before: BRONSON, P.J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

PER CURIAM. This case involves a constitutional challenge to the Medical Malpractice Arbitration Act, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.* (the act).

On July 9, 1976, plaintiff's decedent, Joan Cushman, was admitted to defendant Providence Hospital. Mrs. Cushman signed an arbitration agreement form that day prior to receiving treatment from defendant Drs. Frankel and Mandeberg. The agreement was not revoked in writing within the 60-day period provided by the terms of the arbitration agreement and by the act. MCL 600.5041(3)

and (5), 600.5042(3), (4); MSA 27A.5041(3) and (5), 27A.5042(3), (4).

Mrs. Cushman died after her discharge from the hospital. On July 5, 1978, plaintiff filed suit as the administrator of Mrs. Cushman's estate in Wayne County Circuit Court, alleging medical negligence against defendants. Defendants brought a motion for accelerated judgment, contending that the court lacked jurisdiction to hear the case because of plaintiff's failure to revoke the arbitration agreement. The trial court granted defendants' motions and plaintiff now appeals as of right.

On appeal plaintiff raises three objections to the arbitration scheme. First, plaintiff argues that the act violates his right to a hearing before a fair and impartial tribunal since any arbitration panel will include a physician or hospital administrator. Next, plaintiff contends that the arbitration agreement constituted an unenforceable contract of adhesion. Finally, plaintiff contends that the circumstances under which arbitration agreements are signed are not conducive to a knowing waiver of the right to court access.

Initially, we reject plaintiff's claim that the arbitration agreement is a contract of adhesion. The essence of an adhesion contract is that it is offered on a take it or leave it basis to a consumer who has no realistic bargaining strength and who cannot obtain the desired services or goods without consenting to the contract terms. *Wheeler v St Joseph Hospital,* 63 Cal App 3d 345, 356; 133 Cal Rptr 775 (1976). Here, plaintiff's decedent was able to receive health care without foregoing the choice between arbitration or court trial. The arbitration act specifically requires these agreements to state that execution is not a prerequisite to treatment. MCL 600.5041(2), 600.5042(2); MSA 27A.5041(2),

27A.5042(2). Moreover, arbitration agreements may be revoked within 60 days of execution, or with regard to hospitals, within 60 days of discharge.

Likewise, we find without merit plaintiff's argument that the signing of the agreement constituted an unknowing waiver of constitutional rights. When plaintiff's decedent entered into the arbitration agreement, the only constitutional right waived was that to trial of any dispute before a court.[1] The agreement provided in pertinent part:

"I understand that Michigan Law gives me the choice of trial by judge or jury or of arbitration. I understand that arbitration is a procedure by which a panel that is either mutually agreed upon or appointed decides the dispute rather than a judge or jury. I freely choose arbitration, and I agree that a judgment of any circuit court may be rendered upon any award or determination made pursuant to this agreement.

\* \* \*

"I certify that I have read this agreement or have had it read to me and that I fully understand its content and execute this agreement of my own free will. I have received a complete copy of the booklet which explains this agreement."

Since we can only presume that plaintiff's decedent read the terms of the agreement before signing it, we conclude that she knowingly waived the right to court access as delineated above.

We find more troubling plaintiff's contention that the required composition of the arbitration panel violates due process. This issue has already produced a split of opinion among members of this Court. Compare *Brown v Siang*, 107 Mich App 91;

[1] Const 1963, art 1, § 14.

309 NW2d 575 (1981), and the majority opinion in
*Morris v Metriyakool,* 107 Mich App 110; 309
NW2d 910 (1981), with *Morris v Metriyakool,* 107
Mich App 110, 121-140; 309 NW2d . 910 (1981)
(BRONSON, J., *dissenting).* We conclude, for the
reasons expressed by Judges BASHARA and CYNAR
in *Brown, supra,* and *Morris, supra,* that due
process is not violated by the act's requirement
that a doctor or hospital administrator sit on
arbitration panels. Nonetheless, we add the follow-
ing observations.

In *Crampton v Dep't of State,* 395 Mich 347; 235
NW2d 352 (1975), the Supreme Court held that the
plaintiff, who had been arrested for drunk driving,
was denied the due process right to a hearing
before a fair and impartial tribunal when his
driver's license was suspended by a two-member
panel consisting of a representative of the Secre-
tary of State and a police officer. The Court con-
cluded that the risk that police officers "will be
unable to step out of their roles as full-time law
enforcement officials and into the role of unbiased
decisionmaker in a law enforcement dispute be-
tween a citizen and a police officer presents a
probability of unfairness too high to be constitu-
tionally tolerable". *Id.,* 357-358.

Likewise, in *Glass v State Highway Comm'r,* 370
Mich 482; 122 NW2d 651 (1963), the Supreme
Court held that a deputy highway commissioner
could not fairly conduct a hearing and decide on
the necessity for condemnation of a parcel for
highway purposes. The Court noted that the dep-
uty commissioner was an interested person inas-
much as his own job security could depend on
whether he carried into effect the highway plan-
ning decisions of his superior.

We believe that the danger of biased decision-

making is significantly lower in the instant situation. The arbitration statute itself provides for procedures to reduce the possibility of bias among panel members. It instructs the arbitration association to conduct an initial screening of potential panel candidates for possible bias. Moreover, in each particular case a panel candidate is required to complete, under oath, a current personal disclosure statement. The parties to arbitration are to receive any information indicative of partiality. MCL 600.5045(1); MSA 27A.5045(1). The parties are also permitted to submit reasonable voir dire questions to an arbitration candidate within 10 days of receipt of the candidate's name. MCL 600.5045(2); MSA 27A.5045(2). The parties may strike from the list of potential candidates any person found unacceptable. MCL 600.5044(3); MSA 27A.5044(3). Although the arbitration association may ultimately impose a panel member upon the parties when a mutual agreement cannot be reached, panel members thus appointed are nonetheless subject to challenge for cause. MCL 600.5044(5); MSA 27A.5044(5).

We believe that these procedures provide sufficient protection against panel bias. To conclude otherwise would imply an inherent prejudice within the medical profession so deeply held as to preclude members from ever standing in judgment of their colleagues. This we cannot accept. The very licensing of members of the medical profession is governed by the Medical Practice Board, 10 of the 11 members of which must be doctors. MCL 338.1803; MSA 14.542(3). Corollary to the board's licensing function is its role in policing the profession on behalf of the public, requiring it to act on license revocations and suspensions. MCL 338.1811; MSA 14.542(11). Such self-regulation is

neither unusual nor unacceptable. In the case of virtually all licensed professions and occupations the public's interest in competent and professional conduct is protected primarily by members of the groups themselves. Further, changes within the medical profession itself preclude us from concluding that unbiased arbitrators could not be found within its ranks.[2] While we would certainly not advocate a system where decisions over malpractice allegations were relegated to arbitration panels or juries composed entirely of medical practitioners, we cannot hold that the safeguards of the malpractice arbitration scheme are inadequate to ensure fair and impartial arbitration panels.

Affirmed.

BRONSON, P.J. *(dissenting).* I dissent for the reasons stated in my partial concurrence in *Morris v Metriyakool,* 107 Mich App 110; 309 NW2d 910 (1981), Judge T. M. BURNS' dissenting opinion in *Williams v O'Connor,* 108 Mich App 613; 310 NW2d 825 (1981), and the majority opinions in *Jackson v Detroit Memorial Hospital,* 110 Mich App 202; 312 NW2d 212 (1981), and *Piskorski v Art Centre Hospital,* 110 Mich App 22; 312 NW2d 160 (1981).

I make the following remarks concerning the majority's analogy to self-regulation in the professions as a justification for upholding the arbitration system here. I believe this analogy is faulty. Internal professional regulatory bodies do not make decisions which adversely affect an aggrieved individual's ability to pursue civil reme-

---

[2] Many members of the bar will recall a time when the medical profession was so close-knit that expert medical witnesses could hardly be found to testify for plaintiffs in malpractice cases. Today, one need only peruse the legal periodicals to find doctors advertising their availability for consultation in such cases.

dies. Disciplinary actions and actions for damages on account of alleged malpractice serve different functions. The two should not be confused and neither adjudicative system should be cited as a reason for upholding some aspect of the other type of system.

I also note that the majority is apparently applying an incorrect legal standard in determining whether the arbitration panels pose due process problems. The question is not whether it is *impossible* to find unbiased arbitrators within the pool of potential arbitrators, but whether a tribunal is composed in such a way that too great a risk exists that one or more of the judges *may* have a personal interest in the outcome of the proceedings and, consequently, be biased. *Ward v Village of Monroeville,* 409 US 57, 59-61; 93 S Ct 80; 34 L Ed 2d 267 (1972), *Crampton v Dep't of State,* 395 Mich 347, 355-356; 235 NW2d 352 (1975).

It is of course true that today plaintiffs' attorneys can find medical practitioners willing to testify against members of their profession. However, to the extent that the majority opinion implies any sort of parity in the ability of the plaintiffs' bar to obtain medical experts, I vehemently disagree. As a judge on this Court for some 13 years, it has been my observation from reviewing the records in many medical malpractice cases that the plaintiffs' bar, with occasional exceptions, must rely on a small group of medical doctors who are used over and over again, while the defense bar faces no such restrictions. Consequently, the plaintiffs' experts are more susceptible to attacks on their neutrality than defense experts. The defense bar knows which doctors are willing to testify for plaintiffs, and I have no doubt that their faces will not be seen on arbitration panels.

I would reverse.