ROME v SINAI HOSPITAL OF DETROIT

Docket No. 44193. Submitted December 2, 1980, at Detroit.—Decided January 19, 1982. Leave to appeal applied for.

Selma H. Rome brought an action alleging medical malpractice against Sinai Hospital of Detroit, Stuart B. Katz, M.D., Richard Kruegel, M.D., R. Miller, M.D., and S. Wilson, M.D. The Wayne Circuit Court, Neal Fitzgerald, J., granted the defendants' motion to compel arbitration and dismissed the complaint. Plaintiff appeals, alleging that the requirement that one member of the arbitration panel be a physician violates her due process right to a fair hearing before an impartial tribunal, that the Medical Malpractice Arbitration Act unconscionably abrogates her right of access to the courts, and that the arbitration agreement form signed by the plaintiff is unenforceable because the plaintiff was not provided with an information brochure and a copy of the executed form as required by statute. *Held:*

1. The requirement that one of the arbitrators be a physician does not violate the plaintiff's due process right to a fair hearing before an impartial tribunal.

2. The Medical Malpractice Arbitration Act's abrogation of the plaintiff's right of access to the courts does not render the act unconscionable.

3. Because the act is in derogation of common law, arbitra-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 374, 376.

Arbitration of medical malpractice claims. 84 ALR3d 375.

Validity and construction of state statutory provisions relating to limitations on amount of recovery in medical malpractice claim and submission of such claim to pretrial panel. 80 ALR3d 583.

[2] 5 Am Jur 2d, Arbitration and Award §§ 6 *et seq.*, 17, 36.

61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 374, 376.

[3, 4] 5 Am Jur 2d, Arbtiration and Award § 14.

[5] 5 Am Jur 2d, Arbitration and Award § 15.

[6] 5 Am Jur 2d, Arbitration and Award § 99.

61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 374, 376.

[7] 5 Am Jur 2d, Arbitration and Award § 8.

61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 374, 376.

Constitutionality of arbitration statutes. 55 ALR2d 439.

tion may not be ordered unless there has been strict compliance with the act. In this case, there is conflicting evidence regarding whether plaintiff received an explanation or information regarding the arbitration option and a copy of the arbitration form which she signed. The matter must be remanded for a determination of whether the statutory requirements were complied with.

Remanded for further proceedings.

D. E. Holbrook, Jr., J., dissented. He would hold that the presence of a physician on a medical malpractice arbitration panel fails to preserve the appearance of fairness because a physician has the potential of being overly influential on the panel's deliberations, because of the relationship between malpractice claims and the availability and cost of malpractice insurance, and because of the physician's interest in the outcome as a member of the health care community. The statutory requirement of a physician on the panel, therefore, violates the due process right to a fair hearing before an impartial tribunal. He would reverse and remand for a trial on the malpractice claim.

### Opinion of the Court

1. Arbitration — Medical Malpractice — Due Process — Statutes.

The requirement of the Medical Malpractice Arbitration Act that one of the three arbitrators assigned to hear a malpractice claim must be a physician does not violate a claimant's due process right to a fair hearing before an impartial tribunal, nor does the relinquishment of a claimant's right of access to the courts render the act unconscionable (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.*).

2. Arbitration — Medical Malpractice — Statutes.

The Medical Malpractice Arbitration Act is in derogation of common law in that it takes away one's right to sue and have his case heard by a jury in a court of law; therefore, an arbitration agreement executed pursuant to it must be in strict conformance with the statute before arbitration may be ordered (MCL 600.5042[8]; MSA 27A.5042[8]).

3. Arbitration — Arbitration Agreement.

The language of an arbitration agreement is to be given its plain meaning.

4. Arbitration — Arbitration Agreement.

Arbitration agreements should be liberally construed with all

doubts about the arbitrability of an issue to be resolved in favor of arbitration.

Dissent by D. E. Holbrook, Jr., J.

5. Arbitration — Validity of Arbitration Agreement.

*The question of the validity of an arbitration agreement is a judicial question; compulsory submission of a dispute to arbitration cannot precede a judicial determination of the validity of the agreement itself.*

6. Arbitration — Medical Malpractice — Physicians.

*Physicians should be excluded from arbitration panels hearing claims of medical malpractice in order to preserve the appearance, as well as the fact, of fairness and impartiality because: (1) a physician, because of his professional opinions, has the potential of being overly influential on the panel's deliberations; (2) there is a direct and substantial relationship between malpractice claims and the availability and cost of malpractice insurance, thus giving the physician a pecuniary interest in the matter; and (3) a physician, as a member of the health care community, has an interest in the outcome of a malpractice claim.*

7. Arbitration — Medical Malpractice — Due Process — State Action — Statutes.

*The statutory proscription against issuance of malpractice insurance policies to hospitals unless the policies require the hospitals to offer patients the option to arbitrate claims, and the statutory regulation of the form of the agreement, the composition of the panel, the selection of the arbitrators, and the arbitration procedure, provide a sufficiently close relationship between the state and the arbitration of malpractice claims to find state action for purposes of invoking due process protections (MCL 500.3053[1], 600.5040 et seq.; MSA 24.13053[1], 27A.5040 et seq.).*

*Charfoos & Charfoos, P.C.* (by *John G. Konkel*), for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Anthony G. Arnone*), for defendant Sinai Hospital of Detroit.

*Moll, Desenberg, Bayer & Behrendt,* for defendants Katz and Kruegel.

Before: D. C. RILEY, P.J., and D. E. HOLBROOK, JR., and M. B. BREIGHNER,* JJ.

D. C. RILEY, P.J. We adopt the facts as they are clearly and concisely set forth in the dissenting opinion.

For the reasons stated in *Brown v Siang,* 107 Mich App 91; 309 NW2d 575 (1981), we hold that plaintiff's due process right to a fair hearing before an impartial tribunal is not violated by MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.,* where one of the three arbitrators assigned to hear a medical malpractice claim is a physician. Nor is the act unconscionable in that it abrogates plaintiff's constitutional right of access to the courts. Thus, we affirm the trial court's decision upholding the statute.

However, we conclude, further, that the third issue raised by the plaintiff—whether the arbitration form signed by plaintiff was an enforceable agreement where defendant hospital failed to provide plaintiff with an information brochure and a duplicate or original of the executed form as required by MCL 600.5042(7); MSA 27A.5042(7)—requires a remand to the trial court for an evidentiary hearing.

It is conceded that the plaintiff at no time has denied the existence of a signed arbitration agreement form. Nonetheless, the plaintiff contends that an arbitration agreement cannot be legally valid unless it is in strict conformance with the arbitration statute, MCL 600.5042(8); MSA 27A.5042(8). We agree.

* Circuit judge, sitting on the Court of Appeals by assignment.

In an affidavit dated January 31, 1979, attached to defendant's brief, an employee of Sinai Hospital at the time of plaintiff's admission states that, in accordance with routine practice in carrying out her duties with respect to arbitration agreements, she explained the agreement to the plaintiff, gave her a copy of the agreement and brochure explaining the agreement, advised plaintiff that her signature was not required, and further, that if she did sign she had 60 days within which to revoke her agreement to arbitrate. Her affidavit attests further to witnessing the plaintiff's signature on the agreement.

The plaintiff, in her affidavits, acknowledges that an arbitration agreement was presented to her at the time of her hospitalization but states that no verbal explanation or information was provided her, that she did not receive the brochure setting forth details about the agreement and its revocation provision, that she did not receive a duplicate copy of the original agreement and that she did not understand the entire matter of arbitration.

In concluding that a remand is mandated to resolve the fact issue raised by plaintiff, we find *Capman v Harper-Grace Hospital,* 96 Mich App 510; 294 NW2d 205 (1980), and *Pipper v DiMusto,* 88 Mich App 743; 279 NW2d 542 (1979), to be instructive.

In *Pipper,* the Court held that the plaintiff's affidavit alleging that, at the time she was admitted into the hospital, she was receiving emergency treatment within the meaning of MCL 600.5042(1); MSA 27A.5042(1) (which provides that a person receiving emergency treatment must be offered the arbitration option *after* the emergency care or treatment is completed) created a question of fact

requiring an evidentiary hearing to determine if the plaintiff met the conditions of the emergency exception.

In *Capman,* the plaintiff argued that defendant conditioned the providing of health care upon her signing the arbitration agreement and thereby improperly coerced her in direct violation of MCL 600.5042(2); MSA 27A.5042(2). The *Capman* Court, while noting plaintiff's "unsupported assertion" of coercion, concluded as follows:

"[I]n stating its conclusion, the trial court shall set forth the findings of fact and the law upon which it is based. It should be noted that the arbitration statute is in derogation of common law. It takes away one's right to sue and have one's case heard by a jury in the court of law. Although its objects are laudatory considering the plethora of malpractice litigation that has burdened our court dockets, the fact that it is purely a creature of statute in derogation of common law requires strict statutory compliance before arbitration may be ordered. To insure that such strict compliance was in effect herein, remand becomes necessary." *Capman, supra,* 517-518.

We note that a fundamental rule of construction requires that the language of an agreement be given its plain meaning. *New Amsterdam Casualty Co v Sokolowski,* 374 Mich 340; 132 NW2d 66 (1965), *Kukowski v Piskin,* 99 Mich App 1; 297 NW2d 612 (1980). Further, we note that there is a strong public policy in this state favoring arbitration. Hence, arbitration clauses should be liberally construed with all doubts about the arbitrability of an issue to be resolved in favor of arbitration. *Kukowski, supra, Detroit Automobile Inter-Ins Exchange v Reck,* 90 Mich App 286; 282 NW2d 292 (1979). Nevertheless, consistent with *Capman* and *Pippin, supra,* we conclude that a remand is neces-

sary herein to determine whether or not the plaintiff received a brochure describing the arbitration agreement and whether a duplicate or original copy of the agreement was provided the plaintiff.

Remanded to the trial court for proceedings consistent with this opinion.

M. B. BREIGHNER, J., concurred.

D. E. HOLBROOK, JR., J. *(dissenting).* Plaintiff appeals from an order dismissing her complaint and compelling arbitration in a medical malpractice claim.

At the time of her admission to defendant hospital, plaintiff signed a standard arbitration agreement pursuant to the Medical Malpractice Arbitration Act (MMAA), MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.* Plaintiff's complaint alleges that one or more of the defendant doctors damaged the femoral nerve and artery in her right leg while performing hip surgery. Subsequently, it was necessary to amputate plaintiff's leg. Following the trial court's grant of defendants' motion to compel arbitration, plaintiff appeals as of right.

First, defendants contend that the proper forum for hearing arguments over the validity of plaintiff's agreement to arbitrate is arbitration, and not this Court. The question of the validity of the underlying agreement is a judicial question. Compulsory submission to arbitration cannot precede a judicial determination of the validity of the agreement itself. *Capman v Harper-Grace Hospital,* 96 Mich App 510; 294 NW2d 205 (1980), *Brown v Siang,* 107 Mich App 91; 309 NW2d 575 (1981).

Plaintiff claims the statutorily prescribed composition of the arbitration panel violates her due process right to a hearing before a fair and impartial tribunal. US Const, Am XIV; Const 1963, art

1, § 17. MCL 600.5044(2); MSA 27A.5044(2) mandates a three-member arbitration panel for medical malpractice claims. One of these arbitrators must be a physician, preferably from the respondent's medical specialty. The question for decision is whether this provision violates the Due Process Clause by creating an impermissible risk of bias.

Whether the presence of a physician on an arbitration panel is violative of due process has been considered by several panels of this Court. Unanimous opinions are split on the outcome. The panel in *Brown, supra,* found the statute constitutionally sound. The MMAA was struck down in *Jackson v Detroit Memorial Hospital,* 110 Mich App 202; 312 NW2d 212 (1981). Most decisions that are not unanimous uphold the statute. *Morris v Metriyakool,* 107 Mich App 110; 309 NW2d 910 (1981), *Brown v Considine,* 108 Mich App 504; 310 NW2d 441 (1981), *Williams v O'Connor,* 108 Mich App 613; 310 NW2d 825 (1981). One divided panel has held the act to be unconstitutional. *Piskorski v Art Centre Hospital,* 110 Mich App 22; 312 NW2d 160 (1981).

The constitutionality of the MMAA has been upheld for two groups of reasons. One group finds the act constitutional because submission to arbitration is a voluntary decision and because of the safeguards provided in the process whereby the arbitrators are selected. The other group upholds the law because (1) one member of a three-member panel cannot be presumed to direct the outcome, (2) the statute insures impartiality of arbitrators, (3) the parties can cure partiality in the courts, (4) the highly technical nature of a malpractice proceeding requires the inclusion of an expert on the panel, and (5) any pecuniary interest resulting from a reduction in malpractice insurance premiums is too remote.

Opinions that hold the MMAA constitutionally deficient on due process grounds have found (1) a direct pecuniary interest of the physician-arbitrator because of the relation between malpractice awards and malpractice insurance premiums, (2) the medical provider has an advocate on the panel with no countervailing advocate for plaintiffs, and (3) actual bias caused by professional pressures manifested by anti-plaintiff attitudes and the "conspiracy of silence".

The Due Process Clause, US Const, Am XIV, entitles a person to a hearing by an impartial and disinterested tribunal, both in civil and criminal cases. *Marshall v Jerrico, Inc,* 446 US 238; 100 S Ct 1610; 64 L Ed 2d 182 (1980). This requirement of neutrality in adjudicative proceedings "preserves both the appearance and reality of fairness, 'generating the feeling, so important to a popular government, that justice has been done,' *Joint Anti-Fascist Committee v McGrath,* 341 US 123, 172 [71 S Ct 624; 95 L Ed 817] (1951) (Frankfurter, J., *concurring),* by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him". *Marshall, supra,* 242. "[J]ustice must satisfy the appearance of justice." *Offutt v United States,* 348 US 11, 14; 75 S Ct 11; 99 L Ed 11 (1954). This "stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties". *In re Murchison,* 349 US 133, 136; 75 S Ct 623; 99 L Ed 942 (1955). These principles compel the conclusion that the panel composition provision of the MMAA violates the Due Process Clause.

The requirement of an impartial and disinter-

ested tribunal has been "jealously guarded" by the United States Supreme Court. The Court has disqualified arbiters without a showing of actual bias in situations where "experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable". *Withrow v Larkin,* 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975). The *Withrow* reasoning was used by the Michigan Supreme Court to disqualify officials who are entrusted with responsibility for arrest and prosecution of law violators from sitting as adjudicators in a law enforcement dispute between a citizen and a police officer. *Crampton v Dep't of State,* 395 Mich 347; 235 NW2d 352 (1975). Therefore, in the instant case, the inquiry must be not only whether there is actual bias on the physician-arbitrator's part, but also whether there is such a probability of actual bias that the appearance or reality of fairness is not preserved.

With these considerations in mind, a parallel can be drawn from GCR 1963, 511.4 to find circumstances where the probability of actual bias is high. GCR 1963, 511.4(4)-(13) presents situations in which juror bias may be inferred. In *McNabb v Green Real Estate Co,* 62 Mich App 500; 233 NW2d 811 (1975), a panel of this Court held that rule 511.4 requires a trial court to excuse a juror whenever a challenge for cause clearly falls within one of the grounds enunciated in subparagraphs (4)-(13). Such a showing is equivalent to a showing of bias or prejudice at common law.

While I recognize that an arbitrator is not a juror, many functions of an arbitration panel can be equated to those of a jury. Moreover, the requirement of impartiality on the part of an arbitrator must be more strict than the same require-

ment on the juror's part. This is a result of the additional functions of an arbitrator, whose duty it is to make a final decision and whose impartiality serves as the ultimate guarantee of a fair and meaningful proceeding. Since juror bias or prejudice can be inferred from GCR 1963, 511.4(4)-(13), by analogy, arbitrator bias can be inferred.

I find three subsections of GCR 1963, 511.4 which are applicable to a physician-arbitrator. These subsections are: (5) that the person has opinions or conscientious scruples which would improperly influence his verdict; (12) that the person has a financial interest other than that of a taxpayer in the outcome of the case; and (13) that the person is interested in a question like the issue to be tried.

(5) *Opinions*

As a result of training and experience, all physicians necessarily have opinions regarding theories of treatment, the proper application of these treatments to patients, the applicable standard of care, and similar predispositions concerning the provision of medical care. I cannot ignore the impact these opinions would have upon the physician-arbitrator's determinations. In addition, physicians, because of their professional opinions, possess the potential of being overly influential in a panel's deliberations. This is one reason lawyers are routinely excluded or excused from jury service. See *Commonwealth v Kloch,* 230 Pa Super 563; 327 A2d 375 (1974).

The physician-arbitrator is more likely than other arbitrators to know the physicians or hospital involved in a case or to be familiar with their professional reputations. This is especially true in a medical specialty where there are few practicing physicians. As a practical matter, plaintiffs will

always require expert medical testimony. The physician-arbitrator is also more likely to know the experts or be familiar with their reputations. These opinions improperly influence an arbitrator's determinations.

Lastly, convictions regarding professional loyalty and medical protocol improperly influence a physician's findings. This is a result of the natural reluctance to injure friends and fellow craftsmen. These convictions are manifested in two ways. One is the well-known aversion of one physician to testify against another. Judge BRONSON's dissent in *Morris, supra,* lists cases and articles that comment on this "conspiracy of silence". Second, these convictions are evidenced by physicians' reluctance to inform a patient of mistreatment by another physician. See *United States v Kubrick,* 444 US 111; 100 S Ct 352; 62 L Ed 2d 259 (1979) (Stevens, J., *dissenting).*

(12) *Financial Interest*

In addition to inferring bias by analogy to GCR 1963, 511.4(12), the United States Supreme Court has disqualified decisionmakers without a showing of actual bias in situations where the decisionmaker has a pecuniary interest in the outcome. This basis for finding the MMAA unconstitutional is discussed by Judges BRONSON and T. M. BURNS in their opinions in *Morris, supra,* and *Williams, supra,* respectively.

An award of damages in a medical malpractice case unavoidably affects insurance actuarial tabulations. Plaintiff's proofs include evidence that a physician's insurance rates are dependent upon the total number of malpractice claims and not upon the individual physician's malpractice experience. I find that the relationship between malpractice claims and the availability and cost of mal-

practice insurance is direct and substantial. This requires disqualification of the physician-arbitrator.

(13) *Interest in a Like Question*

No person is permitted to try cases where he has an interest in the outcome. "That interest cannot be defined with precision. Circumstances and relationships must be considered." *In re Murchison, supra,* 136.

All physicians are members of the health care community. As such, they are interested in and are an integral part of the machinery which provides health care. An aspect of this medical machinery is the resolution of disputes or claims between physicians and patients. A physician's alliance may be expected to be with another physician. Even if this interest is discounted, and granting that physicians are as objective and impartial as any other arbitrator, nevertheless the appearance of justice is better maintained if physicians are excluded from the arbitration panel.

I can find no medical malpractice cases where a physician served as a juror. There are several reasons why there would be no appellate review of this issue. First, in most cases of possible juror bias or prejudice, a challenge is ordinarily granted to insure a fair and impartial trial. *McNabb, supra.* Second, physicians are exempt from jury service under state statutes that are similar to the repealed Michigan statute, MCL 600.1307; MSA 27A.1307. Third, physicians are routinely excused from jury service when it appears that the interests of the public are promoted by an uninterrupted continuation of a physician's regular duties. See MCL 600.1335; MSA 27A.1335.

The above stated grounds for inferring bias or prejudice would compel me to disqualify the physi-

cian-arbitrator as a panel member. I do not suggest that physicians are not persons of honesty and integrity who practice an honorable profession. But both the appearance and reality of fairness must be preserved in adjudicative proceedings. Due process requires no less.

However, protections of the Due Process Clause can only be invoked when there is state action. MCL 500.3053(1); MSA 24.13053(1) forbids malpractice insurers to offer a malpractice insurance policy to any hospital unless the policy requires the insured to offer patients the option to arbitrate claims. This provision also affects all hospital-based physicians. Thus, insurance companies are the means to effect the legislative scheme of general welfare in the MMAA. In addition, the MMAA prescribes the form of the agreement, the composition of the panel, how arbitrators are selected and the entire arbitration procedure. In effect, the state has determined those aspects of arbitration that are usually determined by the parties. Therefore, a sufficiently close nexus with the state exists to find state action.

In view of the foregoing and adopting *Jackson, supra,* and *Piskorski, supra,* together with the dissenting opinions in *Morris, supra,* and *Williams, supra,* I would find that the panel composition provision of the MMAA unconstitutionally infringes upon the due process right to a hearing before an impartial and disinterested tribunal. Since I cannot sever the panel composition from the remainder of the MMAA, I would hold the act to be unconstitutional. Because of my disposition of this issue, it is unnecessary to determine whether or not the defendant complied with the requirements of the MMAA.

I would reverse and remand for trial on the medical malpractice claim.