GALE v PROVIDENCE HOSPITAL

Docket No. 53097. Submitted December 7, 1981, at Detroit.—Decided July 21, 1982.

1. The arbitration agreement does not constitute an adhesion contract.

2. The Michigan medical malpractice arbitration act is constitutional, even though it provides for a physician or hospital administrator to serve as one of three panel members. The safeguards provided are sufficient to protect a plaintiff's due process rights to a fair and impartial tribunal.

3. The arbitration agreement provided in the Michigan medi-

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 17 Am Jur 2d, Contracts § 5.

61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 376.

[2, 9] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 374.

[3, 7] 5 Am Jur 2d, Arbitration and Award § 8.

Constitutionality of arbitration statutes 55 ALR2d 439.

[4] 16A Am Jur 2d, Constitutional Law § 613.

[5] 16 Am Jur 2d, Constitutional Law § 205.

28 Am Jur 2d, Estoppel and Waiver § 163.

[6] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 372.

cal malpractice arbitration act is unconscionable because the patient is deprived of a meaningful opportunity to decide whether to relinquish the constitutional right to court access.

4. The Michigan medical malpractice arbitration act, as it is presently constituted, deprives the patient of a meaningful opportunity to decide whether to relinquish the right to court access.

5. The arbitration agreement is unconscionable since the average patient is in no position to make a knowing evaluation of the choice he is asked to make. It is too likely that the patient will sign away his valuable right to court access without knowing the significance of his action to his future best interest.

Reversed.

D. C. RILEY, P.J., concurred in the result.

R. M. MAHER, J., concurred in the result. He would, however, hold that the Michigan medical malpractice arbitration act is unconstitutional. Also, he would not agree that the Court of Appeals has the power to declare the arbitration agreement provided by the act to be unconscionable.

OPINION OF THE COURT

1. ARBITRATION — MEDICAL MALPRACTICE ARBITRATION ACT — ADHESION CONTRACTS.°

The arbitration agreement provided by the Michigan medical malpractice arbitration act is not an adhesion contract (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.).*

2. CONSTITUTIONAL LAW — ARBITRATION — MEDICAL MALPRACTICE ARBITRATION ACT — DUE PROCESS.

The Michigan medical malpractice arbitration act is constitutional, even though the act provides for a physician or hospital administrator to serve as one of the three panel members; the safeguards provided are sufficient to protect a plaintiff's due process rights (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.).*

3. ARBITRATION — MEDICAL MALPRACTICE ARBITRATION ACT — COURT ACCESS — CONSTITUTIONAL RIGHTS.

The arbitration agreement provided by the Michigan medical malpractice arbitration act is unconscionable since the patient is deprived of a meaningful opportunity to decide whether to relinquish the constitutional right to court access (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.).*

4. CONSTITUTIONAL LAW — FUNDAMENTAL RIGHTS — COURT ACCESS.

Access to the court system is a fundamental constitutional right (US Const, Am XIV).

5. CONSTITUTIONAL LAW — WAIVER.

There must be a knowing, voluntary, and intelligent waiver in order to effectively waive a fundamental constitutional right; courts are to indulge every reasonable presumption against the waiver of such rights.

6. ARBITRATION — MEDICAL MALPRACTICE.

The objective of a health care providing entity in entering into an arbitration agreement is to avoid a jury trial and thereby minimize medical malpractice losses by holding down the amount of recovery; the only concern of the patient when presented with the agreement is the expectation of receiving needed health care.

7. ARBITRATION — MEDICAL MALPRACTICE ARBITRATION ACT — COURT ACCESS.

The Michigan medical malpractice arbitration act, as it is presently constituted, deprives the patient of a meaningful opportunity to decide whether to relinquish the right to court access; the arbitration agreement provided under the act is, therefore, unconscionable (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.).*

CONCURRENCE BY R. M. MAHER, J.

8. ARBITRATION — CONSTITUTIONAL LAW — MEDICAL MALPRACTICE ARBITRATION ACT.

*The Michigan medical malpractice arbitration act is unconstitutional (MCL 600.5040 et seq.; MSA 27A.5040 et seq.).*

9. APPEAL — MEDICAL MALPRACTICE ARBITRATION ACT.

*The Court of Appeals does not have the power to declare the arbitration agreement provided by the Michigan medical malpractice arbitration act unconscionable (MCL 600.5040 et seq.; MSA 27A.5040 et seq.).*

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman),* for plaintiff.

Before: D. C. RILEY, P.J., and R. M. MAHER and CYNAR, JJ.

Cynar, J. Plaintiff appeals as of right from an order entered on July 25, 1980, granting defendant Providence Hospital's motion for accelerated judgment under GCR 1963, 116.1(2), for lack of subject matter jurisdiction.

Plaintiff, Nora Gale, as administratrix of the estate of Herbert Gale, deceased, brought suit against Herbert G. Levin, M.D., P.C.; Sinai Hospital of Detroit; Paul Aronsohn, M.D.; Woodland Medical Group, P.C.; and Providence Hospital, jointly and severally, alleging that they breached the applicable standard of medical care in the diagnosis and treatment of the deceased.

Plaintiff alleged in her complaint that from approximately 1969 until about March 1977, the deceased was treated by Dr. Levin for a "blood disorder". The deceased received treatment from Dr. Aronsohn and Woodland Medical Group, P.C., from July 1977 until October 1978. The deceased also received treatment at Sinai Hospital from January 1977 until September 1979, and defendant Providence Hospital from October 1977 to September 1979. Plaintiff alleged that in spite of this multitude of treatment, it was not until about July 1978, that the "blood disorder" was diagnosed as systemic erythematosus. Plaintiff's decedent died on November 6, 1979.

Defendant's motion for accelerated judgment was predicated on the presence of the deceased's signature upon an arbitration agreement which was presented to the deceased under the medical malpractice arbitration act (hereafter MMAA). MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.*

The issues in this case are the same issues as raised in a substantial number of other cases pending or which have been ruled upon by this Court. The issues presented are: (1) whether the

arbitration agreement is an unenforceable adhesion contract; (2) whether the composition of the arbitration panel requiring one member to be a physician, MCL 600.5044(2); MSA 27A.5044(2), constitutes a denial of due process; and, (3) whether the MMAA is unconstitutional or unconscionable in that it deprives the plaintiff of a meaningful opportunity to decide whether to relinquish the constitutional right to "court access".

Plaintiff's contention that the arbitration agreement constitutes an adhesion contract has been uniformly rejected by this Court. *Brown v Siang,* 107 Mich App 91; 309 NW2d 575 (1981); *Morris v Metriyakool,* 107 Mich App 110; 309 NW2d 910 (1981), *lv gtd* 412 Mich 884 (1981).

Plaintiff contends that the composition of the three member arbitration panel constitutes a denial of due process, because the MMAA requires one member to be a physician, MCL 600.5044(2); MSA 27A.5044(2). A number of Court of Appeals panels have addressed this issue and have reached different results.

Cases holding the composition of the panel to be constitutional are *Morris v Metriyakool, supra; Brown v Siang, supra; Williams v O'Connor,* 108 Mich App 613; 310 NW2d 825 (1981); *Rome v Sinai Hospital of Detroit,* 112 Mich App 387; 316 NW2d 428 (1982). See, also, *Brown v Considine,* 108 Mich App 504; 310 NW2d 441 (1981); *Cushman v Frankel,* 111 Mich App 604; 314 NW2d 705 (1981).

A number of judges have taken contrary positions. Judge BRONSON did so in *Morris v Metriyakool, supra,* as did judge T. M. BURNS in *Williams v O'Connor, supra.* Their position was followed in *Jackson v Detroit Memorial Hospital,* 110 Mich App 202; 312 NW2d 212 (1981), and *Piskorski v Art Centre Hospital,* 110 Mich App 22; 312 NW2d 160 (1981).

I authored the majority opinion in *Morris v
Metriyakool, supra.* With some hesitation, I there
agreed the MMAA was not unconstitutional or
unconscionable since it does not deprive the pa-
tient of a meaningful opportunity to decide
whether to relinquish his or her constitutional
right to "court access". While having serious reser-
vations, I found the MMAA constitutional even
though a physician was a member of the arbitra-
tion panel.

Since *Morris v Metriyakool, supra,* and *Brown v
Siang, supra,* the Court of Appeals has been called
upon to make decisions in an increased number of
cases concerning issues similar to the issues
herein. For the reasons expressed in my opinion in
the *Morris* case, I continue to believe the MMAA
to be constitutional even though it provides for a
physician or hospital administrator to serve as one
of the three panel members. The safeguards pro-
vided under the MMAA are sufficient to protect a
plaintiff's due process rights to a fair and impar-
tial tribunal. It is noted that in *Cushman v
Frankel, supra,* Judge KAUFMAN, as a member of
the majority, took the position that no due process
violation occurred because of the required makeup
of the arbitration panel. However, in *Murray v
Wilner,* 118 Mich App 352; — NW2d — (1982), after
further reflection and repeated consideration,
Judge KAUFMAN determined that due process is
violated when a medical malpractice panel in-
cludes a doctor or hospital administrator. In *Rome
v Sinai Hospital of Detroit, supra,* Judge RILEY
held that a plaintiff's due process rights were not
violated by a panel composition which included
one health care provider. However, in *Strong v
Oakwood Hospital Corp,* 118 Mich App 395; —
NW2d — (1982), Judge RILEY now finds that the

composition of the panel and the failure to advise the patient of this fact constitute a due process violation.

Since upholding the MMAA as constitutional in *Morris v Metriyakool, supra,* many more cases have been submitted for appellate review on similar and other issues. Many learned and comprehensive opinions have been written. After much study and review, I am compelled to change my position and now decide the agreement is unconscionable because the patient is deprived of a meaningful opportunity to decide whether to relinquish the constitutional right to court access.

Access to the court system is a fundamental constitutional right. US Const, Am XIV.

The right of access to the courts is founded in the Due Process Clause, and assures that no person will be denied the opportunity to present allegations to the judiciary concerning violations of fundamental rights. *Wolff v McDonnell,* 418 US 539; 94 S Ct 2963; 41 L Ed 2d 935 (1974).

In order to effectively waive a fundamental constitutional right, there must be a knowing, voluntary, and intelligent waiver. *Johnson v Zerbst,* 304 US 458, 464; 58 S Ct 1019, 1023; 82 L Ed 1461, 1466 (1938); *People v Grimmett,* 388 Mich 590, 598; 202 NW2d 278 (1972). Courts are to indulge every reasonable presumption against the waiver of such rights. *Zerbst, supra,* 464; *Grimmett, supra,* 598.

The MMAA provides for arbitration as an alternative to litigation in order to alleviate the mounting crisis in the area of medical malpractice.

A person about to be admitted as a patient to a hospital has a right to receive health care. In the event malpractice is claimed, the patient has a constitutional right of access to the trial and ap-

pellate courts. By entering into an arbitration agreement, the patient gives up his right to court access in favor of an arbitration panel whose composition may or may not knowingly be agreeable to the patient.

The objective of the health care providing entity in entering into an arbitration agreement has been determined long before the patient seeks medical care. That objective is to avoid a jury trial and thereby minimize medical malpractice losses by holding down the amount of recovery. *Wheeler v St Joseph Hospital*, 63 Cal App 3d 345, 361; 133 Cal Rptr 775, 786; 84 ALR3d 343, 357 (1977). See Henderson, *Contractual Problems in the Enforcement of Agreements to Arbitrate Medical Malpractice*, 58 Va L Rev 947, 994 (1972). The health care provider enters into the arbitration agreement having decided arbitration is in the health care provider's best interest in the event a claim for malpractice arises in the future.

On the other hand, the only concern of the patient when presented with the agreement is the expectation of receiving needed health care. The average patient trustingly places the care of his health into the hands of the health care provider. The more serious the health condition, the greater the anxiety and stress of the patient. The ordinary patient readily agrees to sign all forms submitted for his signature. Malpractice, much less malpractice arbitration, is hardly a subject which enters the mind of the patient. The state of mind of the average person being admitted to a hospital does not suddenly lend itself to studied contract negotiations.

The MMAA, as it is presently constituted, deprives the patient of a meaningful opportunity to decide whether to relinquish the right to "court

access". Prior to signing an arbitration agreement, the patient is possessed of the valuable right, if a dispute arises, to "court access" or to arbitration if both sides agree. Under the circumstances, the average patient is in no position to make a knowing evaluation of the choice he is asked to make. By signing the arbitration agreement, the patient loses his right to "court access". As the arbitration agreement is now offered by the health care provider, it is far too likely that a patient will sign away his valuable right to "court access" without knowing the significance of his action to his future best interest. For the reasons stated, I find the arbitration agreement unconscionable.

Reversed.

D. C. RILEY, P.J., concurs in the result on the basis of *Strong v Oakwood Hospital Corp,* 118 Mich App 395; — NW2d — (1982).

R. M. MAHER, J. *(concurring).* I concur in the result reached by Judge CYNAR, since I continue to adhere to my view that the medical malpractice arbitration act, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.,* is unconstitutional. See *Piskorski v Art Centre Hospital,* 110 Mich App 22; 312 NW2d 160 (1981). However, for the reasons set forth in my concurring opinion in *Strong v Oakwood Hospital Corp,* 118 Mich App 395; — NW2d — (1982), I cannot agree that this Court has the power to declare the arbitration agreement signed by plaintiff's decedent "unconscionable".

I concur in the result.