STRONG v OAKWOOD HOSPITAL CORPORATION

Docket No. 52690. Submitted December 7, 1981, at Detroit.—Decided
July 21, 1982. Leave to appeal applied for.

Michael S. Strong, administrator of the estate of Sherie M.
Strong, deceased, brought an action against Oakwood Hospital
Corporation and others for medical malpractice alleged to have
resulted in Sherie Strong's death. The Wayne Circuit Court,
Roland L. Olzark, J., granted an accelerated judgment in favor
of the defendants on the basis of a valid medical malpractice
arbitration agreement. Plaintiff appeals, alleging that the arbi-
tration agreement was not valid because the statutory composi-
tion of an arbitration panel under the medical malpractice
arbitration act violates the plaintiff's due process rights. *Held:*

1. The medical malpractice arbitration act is unconstitutional
in that the statutory composition of the arbitration panel, as
well as the failure to inform a patient of the panel's composi-
tion, is violative of the patient's due process rights to a fair
hearing before an impartial tribunal.

2. The statutorily mandated arbitration agreements are not
contracts of adhesion. They are, however, unconscionable be-
cause of the inherent disproportionate bargaining positions
between a hospital and a patient and because of the lack of
information presented to the patient regarding the arbitration
process.

Reversed and remanded.

CYNAR, J., concurred in the result.

R. M. MAHER, J., concurred in holding that the act is uncon-
stitutional. He would hold, however, that the courts are not
free to declare the arbitration agreements to be unconscionable,

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 374,
376.
Arbitration of medical malpractice claims. 84 ALR3d 375.
[2] 17 Am Jur 2d, Contracts §§ 5, 192.
[3] 17 Am Jur 2d, Contracts § 5.
[4-6] 17 Am Jur 2d, Contracts § 192.
[5, 6] 5 Am Jur 2d, Arbitration and Award § 163.

because the Legislature has unambiguously endorsed the agreements based upon its determination of public policy.

OPINION OF D. C. RILEY, P.J.

1. ARBITRATION — MEDICAL MALPRACTICE — DUE PROCESS.

The statutory composition of a medical malpractice arbitration panel and the failure to advise a hospital patient of the panel's composition when the patient signs an arbitration agreement upon entering the hospital violate the patient's due process right to a fair hearing before an impartial tribunal (MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*).

2. CONTRACTS — ADHESION CONTRACTS.

An adhesion contract is one in which the weaker party is in a "take it or leave it" situation and the terms of the contract are beyond the reasonable expectations of an ordinary person or are unconscionable.

3. ARBITRATION — MEDICAL MALPRACTICE — ADHESION CONTRACTS.

A medical malpractice arbitration agreement under the Michigan statute is not an adhesion contract.

4. CONTRACTS — UNCONSCIONABILITY.

An unconscionable bargain is one such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other; unconscionability includes an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.

5. ARBITRATION — MEDICAL MALPRACTICE — UNCONSCIONABILITY.

The medical malpractice arbitration agreement authorized by the medical malpractice arbitration act is unconscionable (MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*).

CONCURRENCE BY R. M. MAHER, J.

6. ARBITRATION — MEDICAL MALPRACTICE — UNCONSCIONABILITY.

*A medical malpractice arbitration agreement executed pursuant to the medical malpractice arbitration act should not be declared unconscionable by a court where the Legislature has unambiguously endorsed such an agreement based upon its determination of public policy, which determination is within the province of the Legislature (MCL 600.5040 et seq.; MSA 27A.5040 et seq.).*

*Markle & Markle* (by *Thomas K. DiPietro),* for plaintiff.

*Schureman, Frakes, Glass & Wulfmeier* (by *Edward C. Reynolds, Jr.),* for defendant Oakwood Hospital Corporation.

Before: D. C. RILEY, P.J., and R. M. MAHER and CYNAR, JJ.

D. C. RILEY, P.J. Plaintiff, the administrator of the estate of Sherie Mae Strong, appeals as of right from dismissal of his lawsuit pursuant to a motion for accelerated judgment in favor of defendants. The motion was grounded on the existence of a valid medical malpractice arbitration agreement pursuant to MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.*

In early December of 1977, Mrs. Strong took her minor child, Sherie Mae, to codefendant Dr. Fitzpatrick, a pediatrician. For the prior two days, the child had exhibited flu-like symptoms of a hacking cough, stomach cramps, and fever. Dr. Fitzpatrick diagnosed pneumonitis and a possible diabetic condition, prescribed medication, and sent the child home. The next morning, Mrs. Strong called Dr. Fitzpatrick and told him that the child was no better. He, therefore, advised that the child be taken to the hospital. Sherie Mae was admitted into defendant hospital around 1:30 p.m. on December 10, 1977. Dr. Fitzpatrick had arranged for Dr. Leventer to be Sherie Mae's attending physician. Dr. Leventer examined her for the first time the morning of December 11. The results of a spinal tap indicated that Sherie had Reyes Syndrome. She was transferred to Children's Hospital where she died on December 13, 1977.

The issue in this case involves the constitution-

ality of the medical malpractice arbitration act. This issue has severely divided this Court. The experimental nature of this type of social legislation suggested to many judges of our Court that great deference should be given to the Legislature's attempt to alleviate what was perceived as a malpractice crisis. See *O'Brien v Hazelet & Erdal,* 410 Mich 1, 19-20; 299 NW2d 336 (1980). During the months since I authored *Rome v Sinai Hospital of Detroit,* 112 Mich App 387; 316 NW2d 428 (1982), in which I upheld the constitutionality of the act for the reasons stated in *Brown v Siang,* 107 Mich App 91; 309 NW2d 575 (1981), I have had the opportunity to review this issue raised in various fact patterns and attacked under various legal theories. Upon reconsideration, I now revise my previous position and conclude that the act is unconstitutional for the reasons which follow.

A

The composition of the arbitration panel has been alleged to be a violation of due process in every case before this Court involving the act. See, generally, *Brown v Siang, supra,* 99. The arbitration panel is composed of one layperson, one lawyer, and one health care provider. In *Rome, supra,* I held that a plaintiff's due process rights to a fair hearing before an impartial tribunal were not violated by such a panel.

Judge BRONSON, in his dissent in *Morris v Metriyakool,* 107 Mich App 110; 309 NW2d 910 (1981), stated:

"The portion of the statute relating to the composition of the arbitration panels violates due process of law by forcing the litigant to submit his or her claim to a

tribunal which is composed in such a way that a high probability exists that said tribunal will be biased against the claimant without mandating the use of an arbitration form explicitly detailing the nature of the panel's makeup." *Id.,* 134.

I now agree with Judge BRONSON's position that the failure to advise the patient of the panel's composition violates the patient's due process rights. This position was extended in *Jackson v Detroit Memorial Hospital,* 110 Mich App 202; 312 NW2d 212 (1981), where a panel of this Court found the act deprives a patient of a fair and impartial tribunal because the composition of the arbitration panel creates a situation where the probability of bias is too high to be consitutionally tolerated. The due process requirements of a fair trial in a fair tribunal were sketched by Judge KAUFMAN in *Murray v Wilner,* 118 Mich App 352; — NW2d — (1982), where he concluded that the composition of the panel violated the patient's due process rights.

I find, on the basis of the aforementioned cases, that the composition of the panel and the failure to advise the patient of this fact are violative of his due process rights. See *Williams v O'Connor,* 108 Mich App 613, 623; 310 NW2d 825 (1981) (Judge T. M. BURNS, *dissenting).* Voluntary arbitration has long been recognized as a viable alternative to litigation. As the litigation explosion continues, the importance of arbitration increases. Arbitration can only fulfill its role of easing court congestion if the public has confidence that such a system will render fast, efficient, unbiased justice. The present medical malpractice arbitration system does not lend itself to public confidence but to public criticism. The present system does a disservice not only to the medical community but also

the legal processes of this state. The deficiencies in the medical malpractice arbitration act should be corrected to avoid any long-term detrimental impact on arbitration in general as an alternative to costly litigation.

## B

In *Brown v Siang, supra,* the Court discussed the validity of the arbitration agreement in light of the allegation that it is a contract of adhesion. The case of *Wheeler v St Joseph Hospital,* 63 Cal App 3d 345, 356-357; 133 Cal Rptr 775; 84 ALR3d 343 (1976), was quoted for its definition of an adhesion contract, being one where the weaker party is in a "take it or leave it" situation *and* the terms of the contract are "beyond the reasonable expectations of an ordinary person" *or* are unconscionable. *Brown,* and all cases following it, found that the arbitration agreement is not an adhesion contract.

However, I believe a distinction must be made between the concept of adhesion contracts and unconscionable contracts. "It is to be emphasized that a contract of adhesion is not unconscionable per se, and that all unconscionable contracts are not contracts of adhesion." Restatement Contracts, 2d, § 208, Comment a, p 112. This arbitration agreement is not an adhesion contract, as it is not placed before the patient in the typical "take it or leave it" situation. However, whether the agreement is unconscionable must be considered separately.

Courts have seldom defined the term "unconscionability". The definition most often used has its origin in an early English case, *Earl of Chesterfield v Janssen,* 2 Ves Sr 125, 155; 28 Eng Rep 82

(1750), which stated an unconscionable bargain is one "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other". See *Hume v United States,* 132 US 406; 10 S Ct 134; 33 L Ed 393 (1889).

In *Allen v Michigan Bell Telephone Co,* 18 Mich App 632, 635, fn 1; 171 NW2d 689 (1969), the crucial issue was the unconscionability of a contract term. The *Allen* Court quoted the following from *Williams v Walker-Thomas Furniture Co,* 121 App DC 315, 319; 350 F2d 445; 18 ALR3d 1297 (1965): "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." The Court decided it must consider the relative bargaining power of the parties and whether the challenged contract is substantively reasonable. *Allen, supra,* 637.

"Thus, merely because the parties have different options or bargaining power, unequal or wholly out of proportion to each other, does not mean that the agreement of one of the parties to a term of a contract will not be enforced against him; if the term is substantively reasonable it will be enforced. By like token, *if the provision is substantively unreasonable, it may not be enforced without regard to the relative bargaining power of the contracting parties."* (Emphasis added, footnote omitted.) *Id.,* 638.

There is an inherent disproportionate bargaining position between a hospital and a patient. The patient places himself before the medical establishment seeking help, generally for an immediate problem. The patient does not shop around for the best prices and terms but generally seeks a doctor

and hospital which he trusts and are close to his home. The medical profession seeks to foster public trust and, as a profession, is held to a higher standard of conduct. In *Miner v Walden,* 101 Misc 2d 814; 422 NYS2d 335, 338 (1979), the Court compared a doctor's education against that of his patient and stated that the contrast could be unreasonable and unconscionable. The question is clearly raised whether it is proper for the professional even to offer such an agreement to a patient.

The degree of unequal bargaining strength is only part of the unconscionability equation; whereas, it is the predominate factor in the adhesion contract formula. The focus now shifts to whether the arbitration agreement is substantively reasonable so that a person of common sense would accept the agreement. I have concluded that the agreement is unreasonable due to the lack of information presented to the patient such that a person of common sense who was aware of the deficiencies would not sign the agreement.

The form which is signed fails to advise the patient of the composition of the panel. The agreement does not explain the truncated appellate process available after the arbitration. Nor does the form explain that a parent, as here, who signs the agreement on behalf of a child is also waiving the child's common-law right to disaffirm a contract. MCL 600.5046(2); MSA 27A.5046(2). The form does not advise the patient or his family what procedures should be taken to revoke the agreement should the patient die while in the hospital or shortly after discharge from it. Furthermore, the agreement does not adequately explain the range of actions covered by the agree-

ment. This list of deficiencies is not exhaustive, for other sections of the agreement and of the patient information booklet could be considered unconscionable, such as the inference that the hospital will not arbitrate a future claim if this agreement is not signed.

As important as the lack of information problems described above, are the concerns that the patient may enter the agreement without doing so in an intelligent, knowing, and voluntary manner. *Moore v Fragatos,* 116 Mich App 179; 321 NW2d 781 (1982), addressed this problem. Judge MAHER's opinion in *Moore* highlights the basic problems, but even with the measures suggested, they are not eliminated. I conclude that in light of the manner in which the agreements are entered into, as well as the dearth of information to patients, the agreement is unconscionable.[1]

Reversed and remanded for trial.

CYNAR, J., concurs in the result on the basis of *Gale v Providence Hospital,* 118 Mich App 405; — NW2d — (1982).

R. M. MAHER, J. *(concurring).* I concur in Judge RILEY's statement of facts and in Part A of her opinion. I cannot agree, however, that the medical malpractice arbitration agreements involved here are unconscionable.

---

[1] Judge MAHER's concurrence suggests that the medical malpractice arbitration agreement cannot be found unconscionable, as contrary to public policy, because the Legislature has made a determination that it enjoys favorable public policy status. I disagree.

The underlying policy of a legislative enactment enjoys favored status until it becomes clear that the actual application of the statutory provisions emasculates the very purpose of the enactment. Thus, no longer serving the public interest, it no longer enjoys favored status.

Therefore, I conclude that the act is unconscionable notwithstanding the Legislature's declaration of public policy.

A finding of unconscionability generally reflects a determination that enforcement of a particular agreement is contrary to public policy. I agree that enforcement of these agreements is bad policy. Nevertheless, in the last analysis, determination of public policy is the province of the Legislature. Where the Legislature has unambiguously endorsed a particular kind of agreement, the judiciary is no longer free to declare that such agreements are unconscionable. It seems to me that the Legislature has, wrongly or rightly, given its unqualified seal of approval to these arbitration agreements, and that I must therefore defer to its declaration of public policy.

I note, however, that the record does not affirmatively show that the decedent's mother made a knowing, intelligent, and voluntary waiver of her daughter's constitutional right to access to the courts. See *Moore v Fragatos,* 116 Mich App 179; 321 NW2d 781 (1982). Moreover, I entertain grave doubts with respect to the validity of a parent's purported waiver of his own child's constitutional rights. Resolution of this issue, however, can wait until another day.

In concur in the result.